### JOHN H. KIRBY v. ROI BLAKE.

Decided January 8, 1909.

**1.—Evidence—Depositions—Answer not Responsive.**

Objection that an answer is not responsive to the interrogatory goes to the manner and form of taking the deposition, and to be available must be made in writing with notice to the opposite party before the trial commences.

**2.—Same—Lost Deed.**

As tending to prove the execution and contents of a lost deed from the common source, testimony of the immediate vendor that he had carefully exam-

ined a bunch of title papers concerning the grant which came into his posses-
sion as administrator of his father's estate in order to ascertain if the chain
of title was complete, and that he found all the deeds to the land and only
found one thing wrong and that was that a deed other than the one from the
common source was unrecorded, was admissible over objection that it was the
conclusion of the witness as to the completeness and validity of the title.

### 3.—Homestead—Conveyance by Husband—Abandonment.

Where the community homestead is sold and conveyed by the husband alone,
and thereafter the homestead is abandoned by the husband and wife and a
new one acquired, no fraud against the wife's right being shown, the deed be-
comes effective to transfer the title.

### 4.—Tenants in Common—Purchaser from Heir—Recovery by Joint Tenant.

When title by purchase or by limitation is shown in the ancestor who
survived his wife, it will be presumed in the absence of a will that the land
passed under the statutes of descent to all the children, who became joint ten-
ants in common, and a purchaser from one of them becomes a joint tenant
with the others and as such may recover the entire tract from persons having
no title.

Appeal from the District Court of Jasper County. Tried below
before Hon. W. B. Powell.

*H. C. Howell,* for appellant.

*W. W. Blake,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Appellee Blake sued the appel-
lant Kirby for the title and possession of the Jesse B. McNeely labor
of land situated in Jasper County, his petition containing the ordi-
nary allegations in actions of trespass to try title, and also setting up
the statute of limitations of three, five and ten years. Appellant an-
swered by general denial and plea of not guilty, and also pleaded cer-
tain matters of defense to the pleas of limitation alleged by appellee,
which, for the purpose of this opinion, need not be set out. The
case was tried before a jury and resulted in a verdict and judgment
for appellee for the land sued for, from which judgment appellant
has duly perfected this appeal.

It was agreed by the parties that William and Susan Singletary
were the common source of title, and that the grantors of appellant
were the sole heirs of said William and Susan Singletary. Appellee
claims title through a deed made by William Singletary to William
Traylor about the year 1854 and by mesne conveyances to himself.
All the deeds constituting his chain of title were introduced in evi-
dence except the deed from Singletary to Traylor, and the execution
of this deed was sought to be proved by parol. None of the assign-
ments of error presented by appellant in his brief question the regu-
larity or validity of any of the other deeds constituting appellee's
chain of title, nor indeed, is there any valid assignment calling in
question the sufficiency of the evidence to establish the execution, con-
tents and validity of the deed from Singletary to Traylor.

Assignments of error numbers one to seven and nine to eleven, in-
clusive, are not copied in appellant's brief and will therefore be
treated as waived by him, and will not be considered. (Rule 29.)

By the eighth assignment appellant complains of the action of the court in overruling his objection to the following interrogatory propounded to the witness H. W. Bendy and his answer thereto as contained in his deposition: "If in answer to direct interrogatory No. 1 you have undertaken to say that you ever had occasion to investigate the title or papers pertaining to the title of the Jesse B. McNeely labor of land, then state exactly what you did, and all that you did on such occasion." Answer. "When I got a lot of papers as administrator of my father's estate I came into possession of a bunch of title papers concerning the McNeely labor of land, and I examined these papers carefully to find out if the chain of title to said land was complete, and I then found all the deeds to said land and only found one thing wrong with one deed, and that was that the Henderson deed was unrecorded. I then had the Henderson deed recorded." The objection to the question and answer is that the answer was not responsive to the interrogatory and that the answer merely stated the conclusion of the witness as to the completeness and validity of the title, basing such conclusion only upon the papers he claimed to have had in his possession, without stating what such papers were or making any specific statement as to the particular deed claimed to have been lost or destroyed, and in reference to which he had been interrogated. The witness was the immediate vendor of appellee and was a son and heir at law of H. W. Bendy, who at one time claimed title to the land in controversy by mesne conveyance under Singletary. It may be conceded that the answer of the witness was not responsive to the question asked. The objection based upon that ground, to be available, should have been made in writing, and notice should have been given to the opposite party before the trial commenced. Such an objection goes to the manner and form of taking the deposition. (Harris v. Nations, 79 Texas, 412; Brown v. Mitchell, 75 Texas, 9.) The objection that the answer stated the conclusion of the witness as to the completeness and validity of the title, is not tenable. The purpose of taking the witness's deposition was to. show that search had been made for the missing deed from those in whose possession it would most likely be found, as a predicate for establishing the execution and contents of the deed by parol. The testimony objected to was given in response to a cross-interrogatory, and while the answer made was not responsive, it was a statement of facts and not of conclusions. These facts were that as administrator of his father's estate he had come into possession of a bunch of title papers concerning the McNeely labor; that he had examined them carefully to ascertain if the chain of title was complete; that he found all the deeds to the land, and that the only thing he found wrong with any of them was that the Henderson deed had not been recorded. It is not questioned by appellant by any proper assignment that proper proof of loss or destruction of the deed and of its execution and contents had not been made. Indeed, these facts were abundantly proven by testimony other than that of the witness Bendy. The testimony that he found all of the deeds to the land was admissible to prove that the missing deed was then among them; and the statement that it was one of the deeds in the chain of title and that he found

nothing wrong with any save the want of recordation of the Henderson deed, was competent to prove that such a deed had been executed and that it conveyed the land in controversy. The predicate had been laid for the introduction of secondary evidence and the testimony in question tended to prove the issue. (Crain v. Huntington, 81 Texas, 616.)

By his fifteenth assignment appellant complains that the court erred in charging the jury, in effect, that conveyance of the land to Traylor by William Singletary alone would be sufficient to pass the title to the land in controversy, his contention being that because the undisputed evidence showed that at the time of the execution of the deed the land was the homestead of William Singletary and his wife, Susan, the attempted conveyance by the husband without being joined by his wife was void. The legal title was in William Singletary, the land having been conveyed to him. The testimony shows that at the time of the sale to Traylor it was the community homestead of Singletary and wife. This was in 1854. In that year Singletary acquired by preemption another tract of land within a mile or two of the McNeely, upon which he and his wife and children lived until 1867, when they moved to Comanche County. Singletary paid taxes on the land up to the time he conveyed to Traylor, but not afterwards. It now appears to be well settled that where the community homestead is sold by the husband alone and thereafter the homestead is abandoned by the husband and wife and a new one acquired, no fraud against the wife's rights being shown, the deed becomes effective to transfer the title. (Marler v. Handy, 88 Texas, 427; Colonial & U. S. Mortgage Co. v. Thetford, 27 Texas Civ. App., 152.) The assignment is overruled.

Among those through whom the title passed was D. J. Henderson, who sold to H. W. Bendy. The evidence raised the issue whether the Bendy who sold to appellee was the same Bendy to whom Henderson sold. The testimony seemed to make it quite clear that appellee purchased from H. W. Bendy, Jr., the son and heir at law of the Bendy who purchased from Henderson. By his twelfth, thirteenth, fourteenth and sixteenth assignments, which are grouped, appellant urges (1) that the court erred in refusing to instruct a verdict for him because the undisputed evidence showed that whatever title there was adverse to appellant's was in the estate of H. W. Bendy, Sr.; that appellee held under another and different person, and therefore did not hold or represent such adverse title; (2) that the court erred in the third paragraph of the charge, relative to the legal effect of the several deeds as carrying and vesting title to the land in controversy, because the evidence showed that whatever title there may have been adverse to appellant, was vested in the estate of H. W. Bendy, Sr., and not in H. W. Bendy, Jr., under whom appellee claims, and hence, appellee did not hold or represent such adverse title; (3) that the court erred in instructing the jury, in effect, that although they might believe from the evidence that the Bendy who purchased from Henderson was not the same person who sold to appellee, yet that the jury might be authorized to find for appellee on his pleas of limitation, because appellee was not connected

by privity of title with the Bendy to whom Henderson conveyed, and there being no proof of occupancy by appellee, the jury was not authorized to find for him under his plea of limitation; and (4) the court should have granted a new trial because the appellee had failed to connect himself by privity of title with the Bendy to whom Henderson sold, and he had failed to show any occupancy of the land either by himself or by others under whom he claimed. A portion of the sixteenth assignment, in addition to that set out in subdivision four above, complains of the refusal of the court to grant a new trial because the evidence was insufficient to establish the existence, contents and loss of any deed of conveyance of the land from Singletary to Traylor. This part of the assignment relates to a matter entirely distinct and disconnected with that contained in the other portions of it and with the other assignments, and can not be placed in the group, nor can it be considered as a proposition to the other assignments, because clearly not germane, nor is it in itself a proposition, nor is it supported by any proposition or statement as required by the rules, and therefore will not be considered.

We are of the opinion that the assignments should be overruled. The testimony was sufficient to justify the court in charging upon the issue of limitation of ten years and the jury in finding that those under whom appellee claims had title under that period of limitation. (Hussey v. Moser, 70 Texas, 42.) The jury was also justified in finding that the land was sold by William Singletary to William Traylor, and the regularity of the title from Traylor to H. W. Bendy is not questioned by appellant. Thus we find that the jury could have found for appellee under either issue. Granting that appellee purchased from Bendy, Jr., and not from the Bendy who purchased from Henderson, and that appellee did not occupy the land after his purchase, still we think the verdict must be upheld, because it seems clear from the evidence, or at least the jury was warranted in finding, that the title to the land was by the sale to Traylor divested out of Singletary and finally vested in the elder Bendy. It was shown that this Bendy was survived by several children and heirs at law, among whom was H. W. Bendy, Jr. There was no evidence that the elder Bendy disposed of the property by will, and therefore it must be presumed that upon his death, his wife having died first, it passed under the statutes of descent to all of his children, who then became tenants in common with each other. When appellee purchased the interest of Bendy, Jr., he became a joint tenant with them in the land, and as such could recover the entire tract from persons having no title. (Pilcher v. Kirk, 60 Texas, 162; Croft v. Rains, 10 Texas, 523; Watrous v. McGrew, 16 Texas, 510.) And this is true whether the Bendy title was acquired by purchase or limitation.

There being no reversible error presented, the judgment of the District Court must be affirmed.

*Affirmed.*