CHANCELOR v. SLAUGHTER.   (No. 2090.)

(Court of Civil Appeals of Texas.   Texarkana. March 6, 1919.)

APPEAL AND ERROR ☞759—BRIEFS—FAILURE TO COPY ASSIGNMENTS—ABANDONMENT.

Under rule 29 for the Courts of Civil Appeals (142 S. W. xii), assignments of error relied upon by appellants, but not copied in their brief, must be regarded as abandoned, and cannot be considered.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Suit by F. M. Chancelor against R. E. Slaughter. From judgment for defendant, plaintiff appeals. Affirmed.

F. M. Chancelor and his wife owned a lot abutting on a street in Edgewood, on which was a house they used as a home and as a hotel. Appellee, Slaughter, owned the lot adjoining the Chancelor lot on the west. Both the lots were "business lots"; that is, they were in the business part of the town of Edgewood, and were intended for use as sites for business instead of residence houses. The Slaughter lot was vacant, except that Chancelor with Slaughter's consent, had a part of it fenced, which he used as a garden for growing vegetables. The fronts of the houses on lots abutting on the street on each side of the Chancelor house were even with the street line, but the front of the Chancelor house was back 10 feet from said street line. In July, 1916, Slaughter resumed possession of his lot, and, using corrugated iron for the purpose, built a house thereupon for use as a garage. The house was so constructed that its front, like the fronts of the other houses on the street except the Chancelors, was even with the street line. Therefore it obstructed the view west from the Chancelor house, which, as before stated, was back 10 feet from the street line. Alleging that he was entitled to the possession of the Slaughter lot during the year 1916, and that he was damaged in the value of the garden growing thereon (which he alleged to be $500) when Slaughter took possession thereof; further alleging that by reason of the garage being of corrugated iron and so built as to obstruct the view from his house, his premises were worth $1,000 less than they otherwise would have been; and further alleging that he was sick during the time Slaughter was engaged in building the garage, and was damag-ed $5,000 as the result of mental anguish caused by the noise, etc., made by workmen who constructed the building, and by people operating automobiles, etc., after it was constructed, and was further damaged in the sum of $126 for medicines, etc., purchased on account of such sickness, Chancelor brought this suit against Slaughter. Chancelor having died after he commenced the suit, his widow and minor child continued the prosecution thereof. It appeared from testimony of Mrs. Chancelor as a witness that she and her husband waived any right they may have had to the possession of the Slaughter lot during the year 1916, and that the real and only ground of their complaint against Slaughter was that they built the garage so that the front thereof was on a line with the street, and therefore obstructed the view from their house, whereas, to avoid that, he had agreed to build it on a line with their house. She testified as follows:

"At the time of the erection of this garage building my husband was living, but he was quite ill; he was mighty feeble in health. Mrs. Slaughter and I had a talk about the erection of the building. In the first place he brought the plot to my home and laid it on the table. He said, 'Mrs. Chancelor, I am going to build a house out on my lot.' I said, 'If you are going to build a house I won't object if you build it back on a line with my main building, but I would rather you would wait until I take care of my garden.' He said he couldn't wait, but he says, 'Well, now, I wouldn't build out on your front at all,' and I said that would be all right, but I said I didn't want my front closed in from town, and he said he wouldn't do it. Well, he went on, and in a little while, about three hours, I noticed he had piles set 10 feet beyond my porch. He built the building north and south. Well, I went to him. I considered Mr. Slaughter a man of his word. I didn't go to him because I was mad or anything of the kind, and I asked him quite nice, 'Mr. Slaughter, you are not building your house according to the contract at all; you told me you would build back of the line.' I asked him who was to rent it; he told me, and I went to see the party. Mr. Slaughter will tell you this. I begged him not to do this. If he had built it as agreed, I would not have opened my mouth. I agreed with Mr. Slaughter about this building—with the front to correspond with my main building—not to close me in with his tin building."

The appeal is from a judgment in Slaughter's favor in accordance with a verdict returned by the jury as directed by the court.

L. Davidson, of Canton, for appellant.
Wynne, Wynne & Gilmore, of Wills Point, for appellee.

WILLSON, C. J. (after stating the facts as above). Neither one of the several assignments of error relied upon by appellants is copied in their brief. As rule 29 (142

S. W. xii) for the government of this court expressly provides that an assignment not so copied "shall be regarded as abandoned," the objection made by appellee to a consideration of the contention made in said brief must be sustained. It has been repeatedly held that the requirement in the rule cannot be ignored. Martin v. Bank, 102 S. W. 131; Gambould v. Railway Co., 40 S. W. 834; Poland v. Porter, 44 Tex. Civ. App. 334, 98 S. W. 214; Kirby v. Blake, 53 Tex. Civ. App. 173, 115 S. W. 674; Hearn v. Harless, 154 S. W. 613; Overton v. Colored K. of P., 163 S. W. 1053; Koch v. Railway Co., 46 Tex. Civ. App. 84, 102 S. W. 136.

An examination of the record has not only failed to disclose error "apparent on the face thereof," but has satisfied us that the judgment was a proper one. Therefore it is affirmed.