## HILL et al. v. McINTYRE DRILLING CO.
### et al.
### No. 4298.

Court of Civil Appeals of Texas. Texarkana.
March 30, 1933.

Rehearing Denied April 6, 1933.

Pollard, Beauchamp, Lawrence & Lux, of Tyler, Cunningham, Moursund & Johnson, of San Antonio, and McCartney & McCartney, of Tyler, for appellants.

Mayfield & Grisham, J. W. Akin, and Fred V. Hughes, all of Tyler, Futch & Weldon, of Henderson, and Weeks, Hankerson & Potter, of Tyler, for appellees.

JOHNSON, Chief Justice.

April 4, 1927, M. L. Thompson and wife, Inez Thompson, executed an oil and gas lease conveying seven-eighths of the minerals in and under 198 acres of land in Rusk county, Tex., to C. M. Joiner, trustee. Mrs. Inez Thompson died January 10, 1931. M. L. Thompson qualified as community administrator on March 18, 1931. This suit was filed by appellants Mrs. Newton Hill and others, being all the heirs of Mrs. Inez Thompson, deceased, except two of her living children. The suit is to cancel the Joiner lease as to 50 acres of the land described, valued at $1,000,000. This 50 acres was community property, and constituted a part of the homestead of M. L. Thompson and wife, Inez Thompson, at the time of the execution of the lease, and so continued to the date of the death of Mrs. Thompson. Appellants seek to cancel the lease on the grounds (1) that the name of the lessee (C. M. Joiner, trustee) and the term (five years) for which the lease should run, were omitted from the instrument at the time it was executed; (2) that the notary public, G. P. Birdwell, who took the acknowledgments of Mr. and Mrs. Thompson, was interested in the lease, being one of the parties for whom C. M. Joiner was holding as trustee; (3) and the failure in the payment of some of the installments of rentals when due prior to October 4, 1930.

January 19, 1932, M. L. Thompson for himself and as community administrator of the community estate of himself and his deceased wife, Inez Thompson, filed his plea of intervention in the suit, and on January 28, 1932, filed his supplemental petition, in each of which he adopts the pleadings of the plaintiffs, but prays for judgment in his own right as such community administrator.

The appellees, defendants in the trial court, jointly claim title to the seven-eighths leasehold interest in the 50 acres under the lease by regular chain of assignments from C. M. Joiner, trustee. In answer to plaintiffs' suit to cancel the lease, defendants pleaded (1) mutual mistake in omitting the name of the lessee (C. M. Joiner, trustee) and the term (five years) for which the lease should run; (2) that, after the name of the lessee, and the term for which the lease should run had been filled in according to the original intention of the parties, Mr. and Mrs. Thompson reacknowledged the execution of the instrument October 13, 1930, before R. A. Motley, a notary public not disqualified; (3) that the lease had been ratified by Mr. and Mrs. Thompson before her death, and by Mr. Thompson, individually and as community administrator, since her death; (4) estoppel by Mr. and Mrs. Thompson before her death, by Mr. Thompson individually and as community administrator since her death, because of their certain acts in regard to, and statements and affidavits of the validity of, the lease. Defendants also pleaded improvements in good faith in drilling six producing wells on the 50 acres at an expense by them of approximately $150,000.

Trial of the cause to a jury upon special issues resulted in the court's entering judg-

ment on February 24, 1932, that plaintiffs and intervener take nothing, denying their prayer to cancel the lease, from which they have perfected this appeal.

Appellants have a number of assignments of error, all of which we have carefully considered, but in this opinion will discuss only the points governing the disposition of the appeal.

The jury found that G. P. Birdwell, the notary public before whom Mr. and Mrs. Thompson acknowledged its execution on April 4, 1927, was interested in the lease. A notary public is disqualified to take the acknowledgment of a conveyance in which he is interested. The acknowledgment of the husband is unnecessary to a conveyance by him, except for the purpose of registration. Mondragon v. Mondragon, 113 Tex. 404, 257 S. W. 215. The acknowledgment of a married woman is made by statute a necessary part of her conveyance. The 50 acres were a part of the community homestead of Mr. and Mrs. Thompson at the time of their invalid acknowledgments before G. P. Birdwell. The lease did not then convey an interest in the property, if a conveyance of the community homestead by the husband is void and of no effect without the joinder and the separate acknowledgment of the wife. Section 50 of article 16 of the Constitution of Texas, provides: " * * * Nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law."

Article 1300, Revised Civil Statutes, provides: "Such consent shall be evidenced by the wife joining in the conveyance and signing her name thereto, and by her separate acknowledgment thereof taken and certified to before the proper officer, and in the mode pointed out in articles 6605 and 6608."

It appears to the writer that the restraint above provided is thereby placed upon the husband; that he is prohibited from selling the homestead with one exception, that is, with the consent of the wife evidenced in the manner provided. However, the construction to be placed thereon is settled that the husband, if it be community or his separate property, may convey the homestead without the joinder of the wife evidenced in the manner provided by statute, when done in good faith and without fraud on the wife. The conveyance is inoperative and may be set aside so long as it remains the homestead. When the homestead character of the property ceases, either by abandonment and acquisition of a new homestead, or by death of the wife, the conveyance then becomes operative; the reasoning being that the husband has the authority to convey the community property, subject to the impediment of its being a homestead. The purpose of the law is to protect the wife's homestead rights in the land. When the homestead character of the property ceases, the reason for the law's protection of it as such ceased. The deed of the husband, theretofore not effective, but having been executed in good faith and without fraud upon the wife, then becomes operative. Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76; Bell v. Crabb (Tex. Com. App.) 244 S. W. 371; Ley v. Hahn, 36 Tex. Civ. App. 208, 81 S. W. 354; Kirby v. Blake, 53 Tex. Civ. App. 173, 115 S. W. 674; Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Goff v. Jones, 70 Tex. 572, 8 S. W. 525, 8 Am. St. Rep. 619; Allison v. Shilling, 27 Tex. 450, 86 Am. Dec. 622; Pitts v. Kennedy (Tex. Civ. App.) 177 S. W. 1016; Eberling v. Deutscher Verein, 72 Tex. 339, 12 S. W. 205; Fisher v. Gulf Production Co. (Tex. Civ. App.) 231 S. W. 450; Southwestern Lbr. Co. v. Evans (Tex. Civ. App.) 275 S. W. 1078; Anderson v. Carter, 29 Tex. Civ. App. 240, 69 S. W. 78. In the case of Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586, a parol sale by the husband alone was upheld by the Supreme Court, it having been taken out of the statute of frauds by possession and improvements by the vendee.

The name of the lessee (C. M. Joiner, trustee) and the term (five years) for which the lease should run were not filled in the blank places provided therefor at the time of its execution. Mr. M. L. Thompson, though, testified that they were left out of the lease by mutual mistake, and the jury so found. Judgment of the court was not error in denying appellants a cancellation of the lease because of these omissions by mutual mistake at the time it was signed by Mr. and Mrs. Thompson. De Flores v. Smith (Tex. Civ. App.) 236 S. W. 505; Henderson v. Odessa B. & F. Co. (Tex. Civ. App.) 15 S. W.(2d) 1095; Long Bell Lbr. Co. v. Lowry (Tex. Civ. App.) 31 S.W.(2d) 345; Durham v. Luce (Tex. Civ. App.) 140 S. W. 850.

On October 13, 1930, after the name of the lessee (C. M. Joiner, trustee) and the term (five years) were inserted in the lease, R. A. Motley, a legally appointed and qualified notary public, and whose qualification is not questioned, carried the lease to the Thompson home, and presented it to Mr. and Mrs. Thompson for the purpose of retaking their acknowledgments. Mr. Motley testified, in substance, that, after explaining to them the corrections and the necessity for their reacknowledgments, they made no objections thereto, and that he then retook their acknowledgments to the original lease signed by them so corrected; that from his explanations made to them at that time they knew they were reacknowledging an oil and gas lease; that he showed it to them, and explained to them what lease they were reacknowledging. He further testified that they did not re-sign the lease on that occasion, that they just reacknowledged their signatures, and "that was as much as was done."

The certificate of Mr. Motley as a notary public taking the acknowledgments of Mr. and Mrs. Thompson on this occasion is regular in form, meeting all the requirements of the statutes as to the acknowledgments of husband and wife, This acknowledgment of Mrs. Thompson is attacked by plaintiffs because the notary did not in fact comply with the requirements of the law in taking it.

Mr. Thompson testified, in substance, that: "Bob (Mr. Motley) just presented the lease to him and his wife, asked him whether or not that was some of his 'scratching' referring to his signature, and he answered, 'yes, that is it'; that was about all that was said, but he said that he wanted to save old man Joiner or something like that, and we passed it off laughing; that if he explained it any further to his wife it was something like this, as he went out the door he said, 'That is your signature and you signed it;' that he did not say anything about being a notary public at the time, and that he did not know whether he was or not."

The jury found that Mr. Motley did not examine Mrs. Thompson privily and apart from her husband at the time, but they further found: Special issue No. 3: "Do you find from a preponderance of the evidence in this case that Mrs. N. I. (Inez) Thompson, on October 13, 1930, appeared before R. A. Motley, a Notary Public for Rusk County, Texas, and then and there acknowledged that she had executed the lease introduced in evidence in this case, dated April 14, 1927?" Answer: "Yes."

Plaintiffs contend that the above finding is not sufficient, in that it does not include the specific finding that Mr. Motley apprised Mrs. Thompson of his capacity and purpose to take her acknowledgment at the time, citing Breitling v. Chester, 88 Tex. 586, 32 S. W. 527; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. In the Wheelock Case, Mrs. Wheelock did not in fact appear before the officer for the purpose of acknowledging the execution of the deed, and no acknowledgment in fact was made by her before the officer, and he did not in any way attempt to take her acknowledgment. It was held that, although the certificate of the notary was formal, Mrs. Wheelock was not estopped from asserting the invalidity of the certificate against an innocent purchaser without notice. In the Breitling Case, Mrs. Chester was summoned before a justice of the peace for the purpose of having her deposition taken. She objected to answering some of the questions, but was advised that she would have to do so. After questioning her, he requested her signature; she signed because she thought she was signing her deposition and that she had to; she then acknowledged it to be her signature. The justice of the peace executed and attached to the deed his certificate of acknowledgment regular in form. It was held that this was not an appearance before the officer for purpose of acknowledging the execution of the deed, and that she had in no way invoked the exercise of the officers' authority in that respect, and that she was not estopped to assert the falsity of the certificate of the officer.

We agree with appellants on the law, but the facts presented do not come within the rule announced in either of the opinions cited. In this case it is not shown that fraud or deceit was practiced by the notary upon Mrs. Thompson at the time. It does not appear that he acted in bad faith. There was no intimation of any other purpose of the meeting than for the purpose of taking the acknowledgment of the deed on the occasion. He was a duly and legally authorized officer for that purpose, and he appeared only for the purpose of the acknowledgment of the deed. The jury found that she appeared before him and acknowledged that she had executed the lease. It does not appear that she was or could have been under the impression that she was acknowledging the execution of the deed for any purpose whatever other than or disconnected from a purpose to give it due authenticity. We are of the opinion that the facts come within the rule that "The certificate of the officer taking the acknowledgment is conclusive of the facts therein stated as against an innocent purchaser without notice." Wiley v. Prince, 21 Tex. 637; Ellington v. Bryant (Tex. Civ. App.) 293 S. W. 327; Haskins v. Henderson (Tex. Civ. App.) 2 S.W.(2d) 864; Adkins-Polk Co. v. Rhodes (Tex. Com. App.) 24 S.W.(2d) 351.

The Joiner lease provides that it shall terminate as to both parties unless the stipulated semiannual rentals are paid in advance or drilling begun. C. M. Joiner failed to pay some of the rentals prior to October 4, 1930. The rentals coming due since and including that date have been kept paid up or drilling done according to the provisions of the lease. The defendants contend that subsequent to October 4, 1930, Mr. and Mrs. Thompson before her death, and Mr. Thompson individually and as community administrator since her death, ratified the lease, and that, by reason of certain acts, statements, and affidavits of Mr. and Mrs. Thompson and of Mr. Thompson individually and as community administrator, appellants were estopped to assert a forfeiture of the lease for failure in the payment of said rentals. The facts on which defendants rely, in substance are:

(1) Payment and acceptance of the rentals due October 4, 1930, and subsequent thereto, under the lease by assignees of C. M. Joiner.

(2) Record of the reacknowledgment of the lease by Mr. and Mrs. Thompson before R. A. Motley, notary public, October 13, 1930.

(3) Execution and record of mineral deed

executed by Mr. and Mrs. Thompson on November 27, 1930, conveying to E. Stokes one-eighth of their royalty retained under the lease, which deeds provide: "Said land being now under an oil and gas lease executed in favor of C. M. Joiner, Trustee, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-eighth of all the royalty, and gas rental or royalty due to be paid under the terms of said lease."

(4) Affidavit of record, executed by M. L. Thompson, December 30, 1930, that each and every installment of rentals accruing according to the terms of the lease had been paid, and that the lease was in full force and effect.

(5) Affidavit of record, executed by M. L. Thompson and wife, Mrs. Inez Thompson, January 6, 1931, that all rentals were paid in advance, and that the lease was in full force and effect.

(6) Execution and record of a mineral deed by M. L. Thompson January 24, 1931, conveying to Shaw Oil Company a one-eighth interest of the royalty retained under the lease, and containing a similar provision as quoted above from the E. Stokes deed.

(7) Execution and record of a mineral deed by M. L. Thompson February 10, 1931, conveying to S. P. Parish one-fourth interest of the royalty retained under the lease, and containing similar provision as quoted above from the E. Stokes deed.

(8) Written statement of record made by M. L. Thompson, February 11, 1931, witnessed by H. F. Weldon and E. L. Fulton, that the name of the lessee (C. M. Joiner) and the term (five years) were left out of the lease by mutual mistake, and that the lease was then in full force and effect.

(9) Affidavit of record by M. L. Thompson, June 2, 1931, that the lease was in full force and effect, and that he would sign the division orders when presented; the first well having been completed under defendants' development about this time.

(10) Execution of the division orders by M. L. Thompson individually and as community administrator, for the oil produced under defendants' development of the property.

(11) Mr. Thompson testified that he understood at the time that the purpose of the affidavits was to set the question of title to rest under the lease "so they would go on and drill and get him some oil wells"; that he was present when defendants took possession of the lease and began drilling, and went out on the lease often during the development; that he understood that they were drilling under the Joiner lease; that he did not try to put them off, but that he wanted them to drill; that some of them said something about that they were under McIntyre, and "I said I didn't know anybody except

Joiner and I never leased to anybody except Joiner, and that is exactly what I told them, but I said, 'Go on and get the oil, it is here, that is what we have been wanting for years'; that they had drilled fifteen or sixteen oil wells on the entire lease, six on the 50 acres; that he has collected a number of royalty checks; and that he was satisfied with the development.

The jury found that, in executing each of the several instruments, affidavits, and statements above enumerated, Mr. and Mrs. Thompson at the time did so with the intention to ratify the Joiner lease.

■ It is contended by appellants that, the property being a homestead, Mrs. Thompson could not ratify the forfeited lease, or be estopped to assert its forfeiture. The wife may not ratify the deed executed by the husband alone to the homestead except she does so by instrument in statutory form or grant and conveyance, Grissom v. Anderson (Tex. Civ. App.) 48 S.W.(2d) 809, cited by appellants; but such are not the facts here. Nor is it the point under consideration. Mrs. Thompson joined in the original execution of the conveyance by signing, but it was invalid as a conveyance by her for lack of her acknowledgment. Subsequent to the alleged forfeiture, she reacknowledged the conveyance, an act of execution and of ratification, and subsequent thereto, made affidavit "that the rentals had been paid in advance and that the lease was in full force and effect," acts of ratification and estoppel. The jury found that she thereby so intended to ratify the lease. Humble Oil & Refining Co. v. Jeffrey (Tex. Civ. App.) 38 S.W.(2d) 374; C. J. pp. 760, 761, § 382. A married woman is not estopped from asserting her rights to land not conveyed in conformity with law unless she has been guilty of positive fraud or some act of suppression which in law would be equivalent thereto. Grissom v. Anderson, supra. But where she has joined in a conveyance terminating on condition subsequent, as the lease in question, she may by her positive acts be estopped to assert that such condition has occurred when such acts are equivalent to fraud or fraudulent concealment. Such fraud or fraudulent concealment, which is a necessary predicate upon which to base an estoppel of a married woman, does not necessarily mean actual and intentional fraud on her part, but an intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. First Texas Joint Stock Land Bank v. Chapman (Tex. Civ. App.) 48 S.W.(2d) 651, 655; Guaranty Bond State Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69. It is further contended, since there were no community debts, that the qualification of Mr. M. L. Thompson as community administrator gave him no authority or power of disposition over the one-half interest in the community home-

198

stead, which descended to her heirs upon the death of Mrs. Thompson, and that as such he could not ratify the lease or be estopped to assert the forfeiture. Upon the death of Mrs. Thompson, one-half the community homestead immediately descended to her children free from the claims of general creditors. It was no part of the assets of her estate to be administered upon by the probate court, Greene v. Cass County State Bank (Tex. Civ. App.) 7 S.W.(2d) 620; Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916; Johnson v. Hampton, 117 Tex. 580, 8 S.W.(2d) 640; Ward v. Hinkle, 117 Tex. 566, 8 S.W.(2d) 641; but it is subject to the right of control, management, and disposition by the husband, R. S. art. 3663; and, when he has qualified as community administrator he has full and complete power of control, management, and disposition without the intervention of the probate court or the consent of the heirs, and regardless of the existence of debts, Brunson v. Yount-Lee Oil Co. (Tex. Sup.) 56 S.W.(2d) 1073. Such authority would include the power to ratify and to bind the estate by estoppel.

We are of the opinion that the above facts and findings by the jury are sufficient to constitute ratification and estoppel as to Mr. Thompson, Mrs. Thompson, and as to Mr. Thompson as community administrator.

Appellants have filed a motion to dismiss this cause in so far only as the judgment of the trial court affects the interest of appellants, who were plaintiffs and interveners in the trial court, in and to a part of the land involved, described in said motion, and in so far as it affects any money in the hands of Ed Berry, trustee, for the McIntyre Drilling Company, and as to any funds for oil runs at the time of the bankruptcy court sale of the lease claims of McIntyre Drilling Company, in and to said property. The motion is agreed to by appellees, and is in all respects granted.

Appellants have also filed an agreed motion to dismiss the appeal of this cause in so far as the judgment of the trial court affects the interest of Mrs. Althia Thompson and husband, Hen Thompson, Mrs. Melissa Pool and husband, Ras Pool, Mrs. Newton Hill and husband, J. H. Hill, in so far as it affects their interest to any portion of this suit, and to dismiss the appeal in so far as it affects the interest of the following named parties to any portion of the north 10 acres described in the judgment of the trial court as being the property of H. Read, and in so far as said appeal affects the interest of H. Read, making final the judgment of the trial court as to said parties, to wit: Robert Bingham (R. H. Bingham), Eula Belle Bingham, for herself and as guardian of the estate of Thelma Silvey and as next friend for Thelma Silvey, Johnie Toole, Eddie Toole, Charlie

Thompson, Melissa Pool and husband, Ras Pool, as next friend for Clarence Thompson, Ura Thompson Garrett and husband, E. T. Garrett, Barney Thompson Stone and husband, Elliott Stone, Mattie C. Thompson, individually and as guardian of John L. Thompson and Cater Thompson, Aubrey Thompson, Oscar Thompson, and M. L. Thompson, individually and as community survivor. This motion is in all respects granted.

Appellant M. L. Thompson, individually and as community administrator of the community estate of himself and deceased wife, Inez Thompson, has filed his motion to dismiss and abandon this appeal in so far as it affects his undivided one-half interest in and to the property described in the judgment of the trial court, praying that this appeal as to him and his interest in said property be dismissed, and that the judgment of the trial court remain in full force and effect, which motion in all respects is granted.

As to the remaining parties and property involved, the judgment of the trial court is in all respects affirmed.