## GORE et al. v. GORE et al.

### No. 6281.

Court of Civil Appeals of Texas. Texarkana.

May 13, 1947.

Rehearing Denied May 22, 1947.

I. E. Beavers, of Winnsboro, W. C. Hock and Hal S. Lattimore, both of Fort Worth, for appellants.

Suiter & Suiter, of Winnsboro, for appellees.

WILLIAMS, Justice.

Will H. Gore and Tom G. Gore, brothers, on December 20, 1917, bought the 155 acres here in controversy, consisting of three contiguous parcels, fully described by metes and bounds, out of the Benj. Thomas and Chas. H. Sims Surveys in Franklin County, Texas. $3,400 in cash was paid for the land, each paying half. Shortly after its purchase, each with his family moved upon the farm; Tom moving into a house situated on the east side, and Will and his family into a house situated on the west side.

A deed dated June 15, 1921, recorded in Franklin County Deed Records May 17, 1922, executed by Will H. Gore without the joinder of his wife, which recites a cash consideration of $1500 then paid him by Tom G. Gore, purports to convey to the latter the former's undivided one-half interest in above 155 acres, with general warranty title. Will's wife died intestate in January, 1936. Tom died intestate in the summer of 1946. In August, 1946, the widow and children of Tom executed an oil and gas lease covering the whole of the 155 acres to Danciger Oil and Refining Company.

Appellees, Will H. Gore and the children of his deceased wife, filed this suit in September, 1946, against appellants, Addie Gore, the widow of Tom G. Gore, their children and the Oil Company, the defendants below, in which plaintiffs sought in their pleadings and evidence and upon jury findings obtained a judgment which decreed that title then rested in plaintiffs to an undivided one-half interest, and in defendants to the other half; appointed commissioners with directions to divide the 155 acres into halves with respect to value; and removed cloud from title on the undivided one-half interest of plaintiffs cast thereon by reason of above oil and gas lease.

Under the pleadings and evidence introduced by the defendants, Tom G. Gore either paid $1500 cash as recited ·in the June 15, 1921 deed or as plead by plaintiffs and under the evidence offered by the latter, this deed was executed so as to place the interest of Will Gore in the land beyond the reach of his creditors, with the agreement as plead by plaintiffs that T. G. Gore would convey the title back after the financial matter of Will Gore had been adjusted with his creditor.

The jury findings which sustained the foregoing allegations of plaintiffs afford no legal support to ingraft a trust upon the June 21 deed in favor of plaintiffs or to cancel and set aside said deed, even if its cancellation had been prayed for.

"It is elementary that property conveyed to a trustee with the view of defrauding creditors or other persons, the conveyances actually having that effect, is not recoverable by the grantor or his heirs or personal representatives. In such case no trust results to the grantor, and equity will leave the parties to such transaction in the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants." 42 T.J. (Trusts) Sec. 63; Rogers v. Rogers, Tex. Com. App., 240 S.W. 1104, 1105; Roth v. Schroeter, Tex.Civ.App., 129 S.W. 203, 205 (w/r).

Special Issue No. 5, which the jury answered "Yes", reads: "Do you find from a preponderance of the evidence that the plaintiff W. H. Gore, either in person or through tenants, held peaceable and adverse possession of *one-half the land* . (italics ours) described in plaintiffs' petition, cultivating, and using or enjoying the same for a period of ten consecutive years subsequent to June 15, 1921, and prior to the date of the filing of this suit on September 19, 1946?"

The submission of the above issue followed the allegations in the petition in which it was alleged that the plaintiffs in

common owned an undivided one-half interest and defendants in common owned an undivided one-half interest in three parcels, therein described by metes and bounds, aggregating 155 acres. Above jury finding is insufficient to support a judgment for plaintiffs grounded on a 10 years' limitation title, Art. 5510, R.C.S. of Texas. Where is the land claimed under a limitation title located on the 155 acres? The petition affords no description as an aid in describing the land claimed to have been held in peaceable and adverse possession. Plaintiff testified, "I always claimed a one-half interest; one-half the rents; if ever divided, it would be North and South." The petition alleged that plaintiffs owned an undivided share in the whole, namely, one-half. The evidence and pleadings both refute exclusive possession necessary to ripen a title under Art. 5510, supra; Merriman v. Lary, Tex.Civ.App., 196 S.W.2d 652, 657.

On June 15, 1921, when Will H. Gore executed this deed, without the joinder of his wife, he and his family then resided on property owned jointly by the brothers, situated in Winnsboro, Wood County, Texas. The family resided in or near Winnsboro from 1919 or 1920 to 1922 or 1923, and then returned to the west side of the 155 acre farm. The wife of Will Gore died in January, 1936, on a near-by farm where the family had moved to a few weeks before. He again moved back to the farm in 1938, where he has since continued to reside.

The jury's finding that Will Gore did not abandon the land as a homestead but intended at all times while he lived in or near Winnsboro to move back will not support plaintiffs' contention that the June 15, 1921 deed is void for the want of the wife's joinder in the conveyance of a homestead. This wife is now dead. In Hill v. McIntyre Drilling Co., Tex.Civ.App., 59 S.W.2d 193, 195, w/r, it is there stated, applicable here, that: "When the homestead character of the property ceases, either by abandonment and acquisition of a new homestead, or by death of the wife, the conveyance then becomes operative; the reasoning being that the husband has the authority to convey the community property (or his separate property), subject to the impediment of its being a homestead. The purpose of the law is to protect the wife's homestead rights in the land. When the homestead character of the property ceases, the reason for the law's protection of it as such ceased. The deed of the husband, theretofore not effective, but having been executed in good faith and without fraud upon the wife, then becomes operative." * * * Citing numerous authorities in support thereof. See also Toler v. Fertitta, Tex.Com.App., 67 S.W.2d 229.

Under the conclusions just stated and under the doctrine of an estoppel discussed and applied in the foregoing authorities, the June 15, 1921 deed of Will H. Gore conveyed at least his community interest in the land, and if any part be his separate estate, that, too.

Issues of fact requested by appellants but not submitted were raised by the evidence to determine what part was the community interest of Will H. Gore in the 155 acres, if any, and what part was his separate estate, if any. On October 11, 1917, W. H. Gore and T. G. Gore, each the owner of a half interest, sold a Wood County tract of land for $5,000 cash. On December 20, 1917, which was less than three months after above sale, they bought the land in controversy, paying $3,400 cash. At the time they acquired the Wood County tract, W. H. Gore was a single man.

The answer of defendant Oil Company admitted it claimed the oil and gas lease, and other than this, denied all and singular the allegations in the petition. It does not appear that any pleading raised any issue with respect to the doctrine of an innocent purchaser.

In view of the fact that the judgment will be reversed and remanded, the record being insufficient to warrant a reversal and rendition of the judgment, we have pretermitted the discussion of the admissibility of certain evidence with respect to Art. 3716, R.C.S., and certain opinion evidence which are not likely to occur upon another trial.

The judgment will be reversed and the cause remanded.