MRS. M. E. MARLER ET AL. V. E. L. HANDY ET AL.

No. 256.

**Husband May Determine the Homestead.**

> The husband, acting in good faith, may select the homestead of the family; and when he has acquired a new home, and his wife has removed with him to the newly acquired homestead, a deed previously made by him, without her concurrence, to the former homestead, becomes operative as to the husband as an estoppel against his right to recover the property. The wife's right, being that of homestead only, ceases when a new homestead has been acquired and she moves thereto. See example....................427, 428

QUESTION CERTIFIED from Court of Civil Appeals for Third District, in an appeal from Llano County.

*C. C. Wells* and *John C. Oatman*, for appellants.—1. A sale of the homestead by the husband without the consent of the wife expressed in the manner pointed out by law, is absolutely null and void. Consts. 1845, 1861, 1866, art. 7, sec. 22; Const. 1869, art. 12, sec. 15; Const. 1876, art. 16, sec. 59; Sayles' R. E. Laws, art. 645; Cross v. Everts, 28 Texas, 524; Welch v. Rice, 31 Texas, 688; Rodgers v. Renshaw, 37 Texas,

625; Whetstone v. Coffey, 48 Texas, 269; Campbell v. Elliott, 52 Texas, 151; Hair v. Wood, 58 Texas, 77; Meers v. Ebers, 16 S. W. Rep., 1060; Inge & Boring v. Cain, 65 Texas, 79; Hays v. Hays, 66 Texas, 607; Murphy v. Coffey, 33 Texas, 508; Freem. on Coten. and Part., secs. 49, 64, 86.

2. A wife in full possession and enjoyment of a homestead, the fee to which is absolutely vested in herself and husband, can not be compelled to elect between this homestead and one the fee to which is in a third party. Farmer v. Simpson, 6 Texas, 303; De Bruhl v. Maas, 54 Texas, 464; Clements v. Neal, 1 Posey's U. C., 41; Mitchell v. Nix, Id., 127.

3. In order to constitute abandonment of a homestead, there must be a fixed purpose and intention to abandon, coupled with the act of abandonment. No length of time that a person is absent from his or her homestead can constitute abandonment, unless there be an intention never to return to and occupy it. Shepherd v. Cassidy, 20 Texas, 29; Cross v. Everts, 28 Texas, 534; Cline v. Upton, 56 Texas, 319; Gouhenant v. Cockrell, 20 Texas, 96; Reinstein v. Daniels, 75 Texas, 640.

4. The husband does not alone represent the homestead rights of the family. The homestead estate being vested in both the husband and wife, who are regarded in law as only one person, and who each take an entirety, the husband can not arbitrarily, and in disregard of the rights and wishes of the wife, abandon the same and thereby deprive her of the right of re-entry. Campbell v. Elliott, 52 Texas, 151; Medlenka v. Downing, 59 Texas, 32; Wynne v. Hudson, 66 Texas, 1; Cox v. Harvey, 1 Posey's U. C., 268.

*R. H. Ward* filed an argument for appellants.

*R. H. Connerly*, for appellees.—1. A husband has the undoubted right in law to fix the locus of a homestead, and his will should control as to the place of the homestead, though ever so strenuously opposed by the wife, if his acts are made in good faith and without intent to defraud his wife. Slavin v. Wheeler, 61 Texas, 654.

2. A deed executed by a husband conveying the homestead, his separate or community property, though not joined in by the wife, is not absolutely void, but voidable merely at the suit of the wife, if suit be brought in proper time; and the wife is emancipated for the purpose of instituting suit, upon the husband's refusing to join with her therein. Irion v. Mills, 41 Texas, 310.

BROWN, Associate Justice.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and question:

"This is an action of trespass to try title, brought in the District Court of Llano County, by Mrs. M. E. Marler. joined by her husband, J. D. Marler, against E. L. Handy, W. T. Moore, Jr., W. T. Moore, Sr.,

R. H. Laning, William Mathews, J. A. Cone, and E. W. Farmer, resident in Llano County, Texas; J. S. Letcher, resident in Dallas County, Texas; George Christian, resident in Burnet County, Texas; Sam Allen and Percy Allen, resident in Harris County, Texas; Ernest Steves and Albert Steves, resident in Bexar County, Texas, to recover lots 5, 6, and 7, in block 1, in the town of Llano, Texas. All the defendants are tenants except E. L. Handy, W. T. Moore, Jr., and J. S. Letcher, who claim under deed from plaintiff J. D. Marler to defendant E. L. Handy, dated September 2, 1884, recorded November 12, 1888.

"The defendants answered by demurrer and not guilty; and defendants E. L. Handy and W. T. Moore, Jr., filed pleas of three and five years' limitation and improvements in good faith. The plaintiffs replied, setting up coverture of plaintiff Mrs. M. E. Marler, and set up homestead rights in her.

"May 25, 1893, judgment was rendered by the court for the defendants, a jury being waived.

"The facts are as follows: J. D. Marler and M. E. Marler were husband and wife, having married in 1868. The lots in controversy were purchased during coverture of Marler and wife, were community property, and were their homestead for several years, they and their two children residing upon the same. The lots were worth about $2500.

"It was agreed by the parties, that there was a consecutive chain of title from the State to J. D. Marler, and that defendants W. T. Moore, Jr., E. L. Handy, and J. S. Letcher, claim title from J. D. Marler, as a common source, anterior to which it should not be necessary for either party to deraign title.

"While J. D. Marler and M. E. Marler were residing on the lots in suit as their homestead, J. D. Marler conveyed the same to E. L. Handy by his individual deed, his wife not joining therein, dated September 2, 1884, which deed was filed for record November 9, 1888, and duly recorded November 12, 1888, in the records of deeds of Llano County, in which the land was situated. The consideration paid for the property was $2500 in money, and property, consisting of a lot in the town of Llano, some lumber, and some money. Before the deed was made, Marler informed his wife that he had sold the homestead, and she said she would not sign the deed, which fact was communicated to Handy before the deed was signed; but Marler, at the time of the sale, told Handy that it was unnecessary for his wife to sign the deed, as his homestead was out on Pecan Creek. Marler had purchased 640 acres of land, about nine miles northwest of the town of Llano, on Pecan Creek, from W. A. H. Miller, agent of A. B. Frank and M. Krakauer, paying $533.33 in cash and giving his notes for $1066.66, with vendor's lien, for the balance of the purchase money. Soon after the sale of the homestead to Handy, Marler commenced to improve the land bought from Frank and Krakauer, inclosed it with a fence, and built a residence thereon—a comfortable, neat residence, with four rooms and galleries, barn and outhouses, suitable for a home for himself and family,

and well furnished, worth $2500; and before the residence was completed—some two or three months after the sale to Handy—he moved his wife and family and his household goods out to the place, intending to make it his home.    Mrs. Marler left the homestead in Llano unwillingly, and always afterwards claimed it as her home, and declared her intention of returning to and recovering it.    Marler, his wife and family, remained on the country place until in the year 1888, when he —his wife joining in the sale—sold the same to one Miles Barler for about $3000, Barler assuming to pay the two vendor's lien notes that Marler had given Frank and Krakauer as part of the purchase money for the same, and which were unpaid.

" At this time Marler owed many debts in Llano, and says he could not pay them.    He owned 613 head of cattle, and sold them to one D. Cunningham at $6 per head for cattle in the Indian Territory at $8 per head; and afterwards Marler and Cunningham sold all the cattle they had bought from each other for property in Vernon, Wilbarger County, Texas, consisting of two residence places, a business house, and a stock of merchandise.    After this, Marler returned to Llano, where he had left his family, sold the 640 acres place to Barler—his wife joining in the deed in form—for the purpose of paying up his debts, and then, after he had settled up his business in Llano, he had his family removed to Vernon with all his effects, having obtained from his partner, Cunningham, one of the residence places in Vernon, and owned it, into which he moved his family and household effects.    They resided in Vernon about four years, and about half the time lived on the place obtained from Cunningham.    Marler went to Vernon to trade and speculate.    As soon as he purchased the place in Vernon, he placed it in the hands of real estate agents for sale, and it remained on the market until it was sold, in 1892.    Mrs. Marler objected to moving to Vernon, was dissatisfied, and all the time claimed that her home was in Llano. Part of the time the family lived in Vernon they boarded, sometimes with persons to whom the residence was rented.    Mrs. Marler joined in the sale of the place in Vernon, which sold for $800—that is, $400 in cash and sixteen notes for $25 each, due one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, and sixteen months after date; the deed dated August 10, 1892.    The house in which the Marler family resided in Vernon was a comfortable four-room residence, surrounded by suitable outhouses and barns, and the yard was inclosed with a neat fence, and had a small orchard upon it.

"Marler and his family were living on the 640 acres tract of land on Pecan Creek and in Vernon about eight years from the time he sold to Handy the Llano property.    Mrs. Marler always claimed the Llano place as her home; frequently said she would at some time sue for it; tried to get her husband to sue for it, but he refused until this suit was brought.

"In the sale of the Llano homestead Marler acted in good faith and without fraud as to his wife, and at the time in good faith intended to improve the place on Pecan Creek and make it the homestead, which was afterwards done. Handy and the other defendants, claiming through him, at the time of the purchase of the property, knew that the Llano property was the homestead of the Marler family. Since the purchase, Handy and his vendees have placed permanent improvements of great value upon the property.

"Additional Statement.—Mrs. M. E. Marler was in Colorado City nearly a year, sending her daughter to school. They rented out the house in Vernon most of the time while she was gone. At the time that they sold the place in Vernon, she was living there on the place, and Mr. Marler was in Llano, whither he had gone a short time before. Mrs. Marler signed the deed to the Vernon property, received all the cash consideration, and had the notes for the deferred payments (sixteen in number) made payable to her. She did this, because Mr. Marler was not there, and she had to attend to the business herself. At the time Mrs. Marler made the sale of the property in Vernon, Mr. Marler was indebted to various parties, and she had those notes made payable to herself, to keep Mr. Marler's creditors from garnishing them.

"Should the acts of Marler—leaving the home in Llano with his family, and living on other places as a home as comfortable as the old home, for eight years, all subsequent to his deed to Handy of the Llano homestead, in which the wife did not join, she leaving the same unwillingly, and continuously thereafter claiming the Llano property as her home, and declaring her intention of returning to the same to reclaim it—should such acts of Marler, the husband, all subsequent to his deed to Handy of the old homestead, under the circumstances stated, be considered as acts of abandonment of the same, and relate back so as to legalize that deed, vest the title in Handy and his vendees, and preclude a recovery of the old home by his wife?

"The foregoing question will be considered, if the court please, in connection with the entire statement of facts hereinbefore made, and with the facts, that at the time Marler executed the deed to Handy he declared to him that it was not necessary for his wife to sign the deed, as his homestead was on Pecan Creek, on a 640 acres survey, paid for in part only, on which there were no improvements, and which was not then in fact the homestead—the homestead being on the lots described in the deed to Handy—he (Marler) having afterwards improved the Pecan Creek property, making of it a comfortable home for his family, and to which he, in two or three months after the deed to Handy, moved his family, acting in all things in good faith, and with no intention to defraud his wife."

The material facts in this case are, that J. D. Marler and his wife, M. E. Marler, occupied the lots in controversy as their homestead, which was community property. The husband conveyed the property to E. L. Handy during the time it was occupied as a homestead; Handy

was informed at the time that the wife refused to sign the deed. Mrs. Marler refused to sign the deed to Handy, and claimed the property as her homestead. About three months after the deed was made, J. D. Marler purchased a tract of land in the country, paying thereon a portion of the purchase money, and giving his notes for the balance. He improved the land, building thereon a substantial residence, and moved with his family, his wife accompanying him, to the new home; she objected, however, to moving at the time. They resided on this place about four years, when they sold it, she joining in the deed.

Marler then bought a place in the town of Vernon, paying the purchase money, and owning it free from incumbrance. He and his wife removed to this place and lived upon it a year or two, sometimes renting it out and boarding with the person to whom it was rented. The place was then sold, Mrs. Marler joining in the deed, receiving the purchase money, and the notes being made payable to her. They then returned to Llano, when this suit was instituted by her, joined by her husband, claiming the property as her homestead.

In selling the property, the first homestead, and purchasing the other homesteads, Marler acted in good faith, changing his home on account of what he believed to be his business interests.

The question presented by the Court of Civil Appeals involves two propositions: 1. Had the husband the right to change his homestead, without the consent of his wife, he acting in good faith, without any intent to deprive her of a homestead, and she accompanying him unwillingly, but residing with him upon the subsequently acquired homesteads? 2. Was the deed made by Marler to Handy void, or did it take effect and vest the title in Handy after the removal of Marler and his family, and the acquisition by them of another homestead?

In the case of Irion v. Mills, 41 Texas, 310, the husband conveyed the homestead without the concurrence of the wife, and they remained upon it until the husband and wife both died. After the death of the husband and wife the administrator sued to recover the property, on the ground that the deed conveyed no title to the homestead. The court held, that the administrator could not recover the land, because the husband, if living, could not have done so. The effect of the decision is to hold, that the husband would have been estopped by his deed to assert title in the land after the time when he could have made a conveyance of it.

In Brewer v. Wall, 23 Texas, 585, Wall gave a bond by which he bound himself to convey the homestead of himself and his wife, which bond was not signed by the wife, who afterwards died, leaving one child. The question arose in that case as to the validity of the bond, and the court held, that a bond given by a husband, by which he obligated himself to convey the homestead, was not void, but after the death of the wife the court would decree a specific performance of the bond. This decision is supported by the following cases in our re-

ports: Wright v. Hays, 34 Texas, 253; Allison v. Shilling, 27 Texas, 450; Cross v. Everts, 28 Texas, 524.

In the case of Slavin v. Wheeler, 61 Texas, 654, the husband and wife had occupied a homestead in the country, from which they removed and acquired another in a small town, on which they were residing when the husband, without being joined by his wife, conveyed the former homestead. It was contended, that as the wife did not consent to the making of the deed, and had always claimed the country place as her home, the deed conveyed no title. Judge Stayton, delivering the opinion, said: "It is contended in this case, that a homestead is not abandoned so long as the wife, who may have voluntarily removed to another with her husband and children, may retain an intention to return to it, even though the husband may have no such intention, and may have provided another, of which he or the community is the owner, equally as valuable, comfortable, and every way desirable as the one formerly occupied, and suited to his business. In other words, it is contended that the right to determine where the home shall be depends on the arbitrary will of a wife. Such a proposition finds no sanction in law, and is in opposition to those laws of nature which make the husband the natural head and protector of the family, whose will, when justly and not capriciously or fraudulently exercised, to enable him properly to fulfill this high trust, ought not to be lightly disregarded. The Constitution protects to the wife the home of the family; and any attempt of the husband fraudulently to abandon it, prompted by malice or desire to deprive the wife of a home, would prove futile. There is nothing in this case to indicate any such disposition; were there, her right to protect herself in a home in such case has been recognized by this court in many cases. There can not be one homestead for the wife and another for the husband, for the law protects but one to the entire family. No good reason can be given why, in the absence of some wrong by the husband, the determination of where the home shall be shall be left to the wife."

Judge Stayton then quoted from Guiod v. Guiod, 14 California, 507, as follows: "She is bound by her marital obligations to live with him, and when he changes his place of residence, she must accompany him. There is no obligation resting upon him to permanently occupy the same place; indeed, the highest interests of himself and family, their health and maintenance, and the proper education of his children, may require a relinquishment of the homestead." Thomp. on Homesteads, sec. 276; Jordan v. Godman, 19 Texas, 273.

From these authorities, and we believe upon sound principle, the rule may be stated, that the husband, acting in good faith, may select the homestead of the family; and that when he has acquired a new home, and his wife has removed with him to the newly acquired homestead, a deed made by him, without her concurrence, to the former homestead, becomes operative as to the husband as an estoppel against his right to recover the property. The wife's right being that of home-

stead only, ceases when a new homestead has been acquired and she removes thereto.

The deed made by Marler to Handy was not void under our Constitution; and although inoperative so long as the property was occupied by him and his wife as a home, yet when he and his family removed therefrom to another homestead, he acting in good faith for the best interests of himself and his family, the deed became operative to vest title in Handy, and the property could not be recovered by the husband, because he would be estopped by the deed, and it could not be recovered by the wife, because her homestead right ceased when her husband acquired and she removed with him to another homestead.

As said by Judge Stayton in the case of Slavin v. Wheeler, above quoted, the act of the husband must be done in good faith, and any fraudulent attempt on his part to deprive the wife of the benefits of the homestead exemption would be rendered futile by the law, which would give her prompt and adequate protection. But the wife can not compel the husband to live at any particular place against his judgment as to what is to the best interests of the family. When such conflicts arise between husband and wife, the husband, acting fairly and in good faith, must be accorded the right to determine the question of the place of residence, and the wife will be bound by his choice when he has procured her a new homestead, and she has removed thereto with him.

Delivered June 27, 1895.