**PETERMAN et ux. v. HARBORTH.\***
(No. 987–4845.)

Commission of Appeals of Texas, Section A. Dec. 14, 1927.

1. **Homestead** ⬿165—Abandoning use for home of portion of tract constituting homestead deprives such portion of homestead character although family continues to use remainder as home.

Abandonment of use for purposes of home of portion of tract of land constituting family homestead deprives such portion of its home-

stead character although family continues to use and occupy remainder of tract as home.

2. **Homestead** ⬿154—Part of homestead may be abandoned by husband even without wife's consent, where husband intends cessation of use of portion to be permanent.

Subject to requirements of good faith on part of husband, abandonment of part of tract as homestead may be accomplished even without consent of wife, whenever use of particular portion for purposes of home has ceased and husband intends that cessation of such use shall be permanent.

3. **Homestead** ⬿165—Portion of tract was abandoned as homestead where owners ceased using land for purposes of home and yielded possession to son for other uses; "abandonment."

Abandonment of land as part of homestead was accomplished when owners ceased to use land for purposes of home for family and yielded possession thereof to their son, to whom they gave land for purpose of its being devoted permanently and exclusively to other uses and purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon —Abandonment.]

4. **Homestead** ⬿177(1)—Donee possessing and improving land formerly homestead of donor in reliance on verbal gift became invested with title by estoppel.

Where land which had been part of donor's homestead had been abandoned as homestead and donee, donor's son, went into possession in reliance upon verbal gift and thereafter made permanent and valuable improvements, gift thereupon became effective to invest donee with title by estoppel, notwithstanding statute of frauds (Vernon's Ann. Civ. St. 1925, art. 1288).

5. **Deeds** ⬿8—Grantee, under deed executed after title became vested by estoppel in grantor's son in possession under verbal gift, did not acquire title.

Grantee in deed executed after title to land in controversy had become vested by estoppel in grantor's son, who had gone into possession and made improvements in reliance upon verbal gift, where son was in actual possession of property when deed was executed, did not acquire title to property in controversy or any rights therein by virtue of deed.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Louis Harborth against Rudolph Peterman and wife. Judgment for defendants was reversed and rendered by the Court of Civil Appeals (291 S. W. 641), and defendants bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

A. P. C. Petsch, of Fredericksburg (Templeton, Brooks, Napier & Brown and Cunningham, Moursund & Johnson, all of San Antonio, of counsel), for plaintiffs in error.

Davis & Wright and John F. Perry, all of San Antonio, for defendant in error.

HARVEY, P. J. In the year 1912, and for a long time prior to that time, Frank Peterman and his wife resided upon and used as their family home a certain tract of land containing 140 acres. The land was their community property. In the year named, Frank Peterman, with the verbal consent of his wife, gave to their son, Rudolph Peterman, by verbal gift, a portion of said tract of land, such portion comprising about 100 acres. Rudolph had recently married. At the time of the gift, the entire tract of 140 acres constituted the rural homestead of Frank Peterman and his wife, but Frank Peterman intended no longer to use the said portion for home purposes, in which intention his wife concurred. The 140-acre tract was inclosed by fence in one general inclosure. Their dwelling house, and all the appurtenant buildings and other improvements, as well as all the cultivated land, except about 2 acres, were on a portion of the tract comprising approximately 40 acres. This portion was separated from the remaining 100 acres by a division fence. About 2 acres of this 100-acre portion was in a cultivated state and the rest was composed of uncultivated pasture land. This 100-acre portion is the land that was given to Rudolph, as above stated; and the latter immediately went into possession thereof, with the verbal consent of his parents, Frank Peterman and wife. Upon going into possession of the land, Rudolph erected thereon a dwelling house for himself and wife, with some assistance from his father and father-in-law, and began using and cultivating the land as his own. The dwelling house cost about $500 or $600. During the period of the ensuing few years, he made, at his own expense, other permanent and valuable improvements on the land, consisting of various outhouses, a well, a windmill, stock pens, cross-fences, and other improvements; and he grubbed a large portion of the land and placed same in a state of cultivation. The value of all these improvements aggregate several thousand dollars. All these improvements were made by Rudolph in reliance upon said gift and with the knowledge and acquiescence of his father and his mother, and were completed long prior to the year 1925, and still are on the land. Rudolph has continuously held possession of the land and resided thereon with his family since he took possession under said gift.

At the time Rudolph took possession of the 100-acre portion under the gift, Frank Peterman and his wife ceased to use same for homestead purposes, with the intention on the part of both to use it no longer for such purposes, and they have not had possession thereof or used same for any purpose since that time. They continued, however, to reside upon and use for home purposes the 40-acre portion upon which their dwelling house stood, until the middle of January, 1925, when they executed to the defendant in error, Louis Harborth, a deed to all the 140 acres. After the execution of said deed, Harborth brought this suit in trespass to try title against Rudolph Peterman and wife for the recovery of said 100 acres held by them under said gift to Rudolph. The verdict and judgment in the trial court were in favor of Rudolph and his wife. Although the testimony on the trial was conflicting in material respects, the facts which we have stated were in evidence, and they are to be taken as established by the verdict and judgment in the trial court. No issue of limitation is raised by the pleadings. The Court of Civil Appeals reversed the judgment of the trial court (291 S. W. 641).

[1, 2] The abandonment of the use for the purposes of a home, of a portion of a tract of land constituting the family homestead, deprives such portion of its homestead character, although the family continues to use and occupy the remainder of the tract as a home. Medlenka v. Downing, 59 Tex. 39; Wynne v. Hudson, 66 Tex. 10, 17 S. W. 110. Subject to requirements of good faith on the part of the husband, such an abandonment is accomplished, even without the consent of the wife, whenever the use of the particular portion, for the purposes of a home, has ceased, and the husband intends that the cessation of such use shall be permanent. Hudgins v. Thompson, 109 Tex. 434, 211 S. W. 586; Smith v. Uzzell, 56 Tex. 318; Speer on Marital Rights, § 420, and authorities supra.

In the case of O'Brien v. Woeltz, 94 Tex. 153, 58 S. W. 944 (86 Am. St. Rep. 829), the court laid down an obviously correct proposition of law, which is appropriate here. The court there said:

"If the husband, without the consent of the wife, can cut off a part of the homestead occupied by the family and strip it of the constitutional exemption, then certainly the husband and wife, concurring in intention and acts, may accomplish the same thing."

[3] Giving, then, full effect to the facts of this case, as they are established by the verdict and judgment in the trial court, an abandonment of the land in controversy, as part of the homestead of Frank Peterman and wife, was accomplished when they ceased to use the land for the purposes of a home for the family and yielded possession thereof to Rudolph Peterman for the purpose of its being devoted permanently and exclusively to other uses and purposes. When such abandonment was accomplished, the assertion of the community title of Frank Peterman and his wife in the land became subject to such relevant estoppel restrictions as might

then have been operative against the former, or which might thereafter become so.

[4] Regardless of the homestead character of the land at the time of the gift, the gift of the land to Rudolph by Frank Peterman, being verbal, was in contravention of the statute of frauds (Vernon's Ann. Civ. St. 1925, art. 1288), and did not, of itself, invest the former with title to the property, or operate, at the time it was made, as an estoppel against Frank Peterman. But, Rudolph having gone into possession of the land in reliance upon the verbal gift and thereafter made permanent and valuable improvements as he did, the gift thereupon became effective to invest Rudolph with title by estoppel, the property having ceased to be a part of the homestead of the donor and his wife. Willis v. Matthews, 46 Tex. 482; Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Hudgins v. Thompson, supra; Roemer v. Meyer (Tex. Sup.) 17 S. W. 597.

[5] The deed from Frank Peterman and wife to the defendant in error was executed after title to the land in controversy had become vested by estoppel in Rudolph Peterman; and the latter was in actual possession of the property when said deed was executed. The defendant in error, therefore, did not acquire title to the property in controversy, or any rights therein, by virtue of said deed.

Inasmuch as we have decided that Frank Peterman and his wife abandoned their homestead rights in the land in controversy, and the land ceased to be a part of their homestead, it becomes unnecessary for us to consider the question of whether or not they, or either of them, would be estopped from asserting against Rudolph their homestead rights, if the land had not lost its homestead character. And we are not to be understood as intimating how that question would have been determined had it been necessary to a decision.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, be reversed, and the judgment of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.