**WEINERT et al. v. COOPER et al.**

No. 5032.

Court of Civil Appeals of Texas.
Texarkana.

June 23, 1937.

Rehearing Denied July 1, 1937.

McEntire, James & Shank and Lasseter, Simpson & Spruiell, all of Tyler, for appellants.

Smith & West, of Henderson, for appellees.

JOHNSON, Chief Justice.

In the year 1929, and for a long time prior thereto, Joe P. Cansler and wife, Dollie Cansler, owned and occupied as their homestead a farm of 40 acres of land in Rusk county. It consisted of two tracts, separated by a distance of about 350 yards. The first tract contained 1½ acres of the F. Cardova survey, on which was situated their residence. The second tract consisted of 38½ acres of the E. Collard survey, which they cultivated to crops each year as a means of support. Other than a cotton pen, there were no improvements on the 38½-acre tract. The land was under an oil and gas lease executed by Joe P. Cansler and wife. They had also sold one-half of the

one-eighth royalty. In the fall of 1929, Joe P. Cansler orally sold two acres of the 38½ acres to his son-in-law, A. B. Cooper, for a consideration of $25 to be paid "when Cooper got the money." Subsequently Mrs. Cooper offered to pay the $25. Mr. Cansler testified that he told Mrs. Cooper to "let it go—the reason I (Cansler) said 'let is go,' the other part of my family was owing me more than that." About the last of September or first of October, 1930, A. B. Cooper completed a dwelling house upon the 2 acres and occupied it with his family, where they have since continuously resided. About a month after A. B. Cooper built his residence on the 2 acres, Cooper verbally gave the west half of the two acres to his brother-in-law, A. C. Cansler, who immediately built a dwelling house thereon and occupied it with his family, continuously to a short time before this trial. A. C. Cansler is a son of Joe P. Cansler and wife, Dollie Cansler. Joe P. Cansler and wife never used or occupied the 2 acres after its parol sale to A. B. Cooper. They continued to use and occupy the remainder of the farm as they had theretofore used it, but the 2 acres were, according to the testimony of Joe P. Cansler, "set over to Cooper."

October 14, 1930, Joe P. Cansler and wife conveyed to Dr. Albert Woldert, Alex Woldert, Sr., H. C. Cross, and E. R. Baldwin, an undivided one-eighth mineral interest (subject to the lease) in the entire 40 acres, including the 2 acres previously sold to Cooper. This mineral deed to Dr. Albert Woldert and others is dated September 22, 1930, but it appears that the conveyance was in fact consummated and the deed delivered and recorded October 14, 1930.

April 4, 1931, Joe P. Cansler and wife conveyed to H. H. Weinert an undivided one-eighth mineral interest (subject to the lease) in the 40 acres, including the 2 acres previously sold to Cooper. The deed to Weinert was filed for record April 13, 1931.

April 16, 1932, Joe P. Cansler and wife executed and delivered to A. B. Cooper a general warranty deed covering the east half of the 2 acres in question, and on the same date executed and delivered a general warranty deed to A. C. Cansler covering the west half of the 2 acres. These two deeds were executed pursuant to Joe P. Cansler's oral sale of the 2 acres to A. B. Cooper and of A. B. Cooper's oral gift of the West half to A. C. Cansler. The deeds were dated November 1, 1929, but

were in fact executed, delivered, and filed for record April 16, 1932.

May 4, 1934, E. R. Baldwin conveyed his mineral interest to E. J. Koenig. May 29, 1934, H. C. Cross conveyed his mineral interest to E. J. Koenig. February 7, 1935, A. C. Cansler and wife, Hester Cansler, by general warranty deed conveyed the west half of the 2 acres to E. F. Benchoff.

This suit was filed February 8, 1935, by A. B. Cooper and wife, Nora Cooper, and E. F. Benchoff against H. H. Weinert, Dr. Albert Woldert, Alex Woldert, Sr., and E. J. Koenig, in trespass to try title to the 2 acres of land above mentioned. Defendants answered by plea of not guilty, and specially pleaded that they were purchasers in good faith for value and without notice of plaintiffs' claims to the land. Trial to a jury resulted in verdict and judgment for plaintiffs. Defendants have appealed.

Appellants' first assignment of error is directed to the action of the trial court in overruling their motion for a directed verdict upon the grounds: (1) That appellees acquired no title or interest in the 2 acres of land by virtue of the oral sale by Joe P. Cansler to A. B. Cooper; (2) that appellants acquired the title claimed by them in good faith, for value, and without any notice, either actual or constructive, of appellees' title or interest, if any appellees have, in the land.

It appears from the undisputed facts and the findings of the jury that appellees had actual, open, visible, and exclusive possession of the 2 acres of land using and occupying it as their homestead on the dates that the mineral interests therein were conveyed to appellants by Joe P. Cansler and wife. Such character of possession was equivalent, in effect of constructive notice, to registration of appellees' claim of title at that time, and would defeat appellants' plea of innocent purchaser. Mainwarring v. Templeman, 51 Tex. 205; Hexter v. Pratt (Tex.Com.App.) 10 S.W. (2d) 692; Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 83 S.W. 184; 43 Tex. Jur. 659, § 389; 31 Tex.Jur. 366, § 6; Pomeroy's Equity Juris. (4th Ed.) vol. 2, p. 1166, § 615.

It is contended that had proper inquiry been made by appellants at the time they purchased, such inquiry would have revealed facts showing that appellees had no title or enforceable rights to the land, in that appellees were claiming under a parol sale of a portion of the homestead of

Joe P. Cansler and wife, effected by the husband without the joinder of the wife in the manner as required by the constitution and statutes of this state. When all the facts established are taken into consideration and given their proper effect under rules of law well settled and here applicable, it is not thought that appellants' contention last stated can be sustained. The undisputed facts show that when Joe P. Cansler verbally sold the 2-acre tract to Cooper in the fall of 1929, he intended to and did completely and permanently abandon its use for purposes of homestead. And there are no facts and circumstances attending his sale and abandonment of the 2 acres indicating that he acted otherwise than in good faith toward his wife. In the fall of the following year, 1930, A. B. Cooper, pursuant to the verbal sale, went into actual possession of the 2 acres and in good faith made permanent and valuable improvements thereon, and occupied it with his family as their home.

In Peterman v. Harborth (Tex. Com.App.) 300 S.W. 33, 34, Frank Peterman with the verbal consent of his wife, verbally gave to their married son, Rudolph Peterman, 100 acres of their 140-acre homestead. Rudolph with his wife went into possession of the 100 acres, built a dwelling house and other valuable and permanent improvements thereon, and occupied it with his family. Subsequently Frank Peterman and wife joined in a deed conveying the entire 140 acres to Louis Harborth. Suit was filed by Harborth against Rudolph Peterman and wife in trespass to try title to the 100 acres. In affirming a judgment of the trial court in favor of Rudolph Peterman and his wife, Judge Harvey states the rules of law, applicable to the facts in the present case, as follows:

"The abandonment of the use for the purposes of a home, of a portion of a tract of land constituting the family homestead, deprives such portion of its homestead character, although the family continues to use and occupy the remainder of the tract as a home. Medlenka v. Downing, 59 Tex. [32] 39; Wynne v. Hudson, 66 Tex. 10, 17 S.W. 110. Subject to requirements of good faith on the part of the husband, such an abandonment is accomplished, even without the consent of the wife, whenever the use of the particular portion, for the purposes of a home, has ceased, and the husband intends that the cessation of such use shall be permanent. Hudgins v. Thompson, 109 Tex. [433] 434, 211 S.W. 586; Smith v. Uzzell, 56 Tex.[315] 318; Speer on Marital Rights, § 420, and authorities supra. * * *

"Regardless of the homestead character of the land at the time of the gift, the gift of the land to Rudolph by Frank Peterman, being verbal, was in contravention of the statute of frauds (Vernon's Ann.Civ.St. 1925, art. 1288), and did not, of itself, invest the former with title to the property, or operate, at the time it was made, as an estoppel against Frank Peterman. But, Rudolph having gone into possession of the land in reliance upon the verbal gift and thereafter made permanent and valuable improvements as he did, the gift thereupon became effective to invest Rudolph with title by estoppel, the property having ceased to be a part of the homestead of the donor and his wife. Willis v. Matthews, 46 Tex. [478] 482; Marler v. Handy, 88 Tex. 421, 31 S.W. 636; Hudgins v. Thompson, supra; Roemer v. Meyer (Tex.Sup.) 17 S.W. 597."

The only material difference between the Peterman-Harborth Case and the present case is that Mrs. Peterman verbally consented to the gift made by her husband, while in the present case it is not expressly shown that Mrs. Cansler consented to the sale made by her husband, at the time it was made. However, it is not thought that the failure to show joinder of Mrs. Cansler, for that reason, prevented the sale made by her husband from becoming operative after the property was by him, in good faith, abandoned for homestead purposes. In Grissom v. Anderson, 125 Tex. 26, 79 S.W. (2d) 619, 621, Judge Sharp states the rule: "A conveyance by a husband, not joined by his wife, of the homestead property, is merely inoperative while the property continues to be a homestead, or until such time as the homestead may be abandoned, or the deed ratified in accordance with law. Marler v. Handy, 88 Tex. 421, 31 S.W. 636; Irion v. Mills, 41 Tex. 310; Brewer v. Wall, 23 Tex. 585, 76 Am.Dec. 76; Goff v. Jones, 70 Tex. 572, 8 S.W. 525, 8 Am. St.Rep. 619."

From the above authorities and the cases cited supporting them, we conclude: That the sale of the 2 acres, then a part of the homestead, by Cansler to Cooper, without joinder of his wife, was not for such reason absolutely void; though inoperative at the time made, the sale became operative upon abandonment by Cans-

ler of the use of the 2 acres for purposes of homestead. That the sale being oral was in contravention of R.S.1925, art. 1288, and for that reason did not of itself operate to invest Cooper with title; but, Cooper having subsequently gone into possession in reliance on the oral sale, and thereafter made permanent and valuable improvements, as he did, the sale thereupon became effective to invest Cooper with title by estoppel, the property having ceased to be a part of the homestead of Cansler and wife. That, being charged with notice by reason of the character of Cooper's possession, appellants acquired no title by virtue of their subsequent purchase from Cansler and wife.

In contending that the sale of a portion of the homestead made by Cansler without joinder of his wife was absolutely void and without power to afterwards become operative, appellants especially rely upon the case of Morris v. Wells, 27 Tex.Civ.App. 363, 66 S.W. 248. In that case Wash Morris gave to his married son, Nevison Morris, an unimproved portion of a lot in Honey Grove, on which lot was located the homestead of Wash Morris and his wife. Nevison Morris at once improved the portion of the lot given to him by his father and went into possession and occupied it with his family for some six years or more and until he surrendered his possession to G. W. Wells to whom he had conveyed the property by warranty deed for a valuable consideration. Subsequently, Wash Morris, joined by his wife, sued Wells in trespass to try title. A judgment in favor of Wash Morris and wife was sustained by the Court of Civil Appeals and writ of error was denied. This case may not necessarily conflict with the authorities above cited, in that the fact of abandonment does not appear to have been presented, nor was it discussed. In this material particular we think the case is distinguishable from the present case and from the authorities above cited. If not so distinguishable, then it would appear that Morris v. Wells is overruled by the decisions in Peterman v. Harborth, supra, and Hudgins v. Thompson, supra.

On trial of the case Joe P. Cansler as a witness for appellants, defendants below testified:

"Q. I want you to tell the jury in your own words what that verbal agreement was between you and Cooper. A. The verbal agreement was that he wanted to, come to me for a building place to build a house and I told him, if he would let me sell another fourth of the royalty, I would let him have the land."

As covering the defensive issue raised by the above testimony, the court submitted to the jury the following question:

"Do you find from a preponderance of the evidence that Joe P. Cansler and wife, Dolly Cansler, orally sold to A. B. Cooper, prior to October 4, 1930, all the remaining interest, then owned by them in the two acre tract of land, including the one-fourth royalty interest in the minerals, involved in this suit? Answer 'Yes' or 'No' as you find the facts to be."

Answer: "Yes."

Defendants objected and excepted to the court's charge: "For the reason that same does not submit the issue raised by the defendants as to whether or not Joe P. Cansler in the alleged oral sale to A. B. Cooper reserved the right to sell another ¼ of the royalty under the land in question." And the defendants requested the following issue, which was refused:

"Special Issue No. 1 Requested by Defendants.

"At the time Joe P. Cansler orally agreed with A. B. Cooper to sell him the two acres of land in question, did said Cooper in said oral agreement reserve the right to sell an additional ¼ of his royalty in said land. Answer 'Yes' or 'No' as you find the facts to be."

Answer: ——.

■ Appellants assign as error the action of the trial court in refusing their said requested special issue. The assignment is not sustained for the reason that we think the issue, as raised by the testimony, was fairly and affirmatively submitted to the jury in the question asked by the court. The defendant is entitled to have submitted to the jury in an affirmative form each fact or group of facts which, if standing alone, constitute a defense to plaintiff's recovery, but the court is not required to submit the same issue twice in different form or language. Ford Motor Co. v. Whitt (Tex.Civ.App.) 81 S.W.(2d) 1032.

■ Appellant H. H. Weinert contends that the trial court erred in rendering judgment against him and in favor of E. F. Benchoff as to the west one-half of the 2 acres because, it is contended, E. F. Benchoff was estopped as a matter of law

to attack the title of Weinert in the one-eighth royalty mineral interest therein; for reason of the fact that A. C. Cansler, Benchoff's grantor, had witnessed the deed executed by Joe P. Cansler and wife conveying the one-eighth mineral interest in the 40 acres, including the 2 acres, to Weinert, April 4, 1931; and which deed was of record at the time Benchoff purchased the west half of the 2 acres from A. C. Cansler and wife. It is not thought that this contention can be sustained, for the following reasons: (1) A. C. Cansler and wife had acquired title to and were occupying the west one-half of the 2 acres as their homestead at the time A. C. Cansler witnessed the signatures of his father and mother, Joe P. Cansler and wife, to the deed conveying the one-eighth mineral interest to Weinert. (2) There is no evidence that A. C. Cansler in witnessing the signatures of his father and mother in fact knew the contents of the deed or that it included the west one-half of the 2 acres in question. (3) There is no testimony showing that H. H. Weinert in fact relied upon or was in anywise influenced or induced to purchase the mineral interests by reason of A. C. Cansler having witnessed the conveyance. 17 Tex.Jur. 128, § 2.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

We were in error in our original opinion in holding that special issue No. 1 requested by defendants was fairly and affirmatively presented by the issue submitted to the jury by the court. It is true that the defensive issue was included within the issue submitted for plaintiffs by the court. But in tying it on to plaintiffs' issue, making a double question, and requiring a "Yes" or "No" answer thereto, deprived the defendants of their right to have the jury pass upon their defensive issue directly and affirmatively, separate from plaintiffs' issue. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. The general rule is stated in 41 Tex.Jur. pp. 1115, 1116, § 280.

Having reached the conclusion that the defendants were entitled to have their defensive issue, raised by the testimony, directly and affirmatively submitted to the jury in an issue separated from plaintiffs' issue, for that reason we grant the motion for rehearing and reverse and remand the cause.