## PRIMITIVE BAPTIST CHURCH AT FELLOWSHIP v. FLA–TEX CORPORATION et al.

### No. 14319.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 9, 1942.

Rehearing Denied Feb. 6, 1942.

Henry L. DeBusk, of Abilene, and Slay & Simon and H. J. Zimmerman, all of Fort Worth, for appellant.

P. O. Beard, of Marshall, and Edwin M. Fulton, of Gilmer, for appellees.

SPEER, Justice.

Plaintiff, Primitive Baptist Church at Fellowship, acting through its Board of Deacons, instituted this suit in trespass to try title, against defendants, Fla-Tex Corporation (an oil development company), the heirs of George Jones, deceased, and others. Parties will carry the same designation here as in the trial court.

From an adverse judgment, plaintiff perfected its appeal to the Texarkana Court of Civil Appeals, and under an equalizing order of dockets by the Supreme Court the case is before us.

Title and possession of approximately two acres of land in Upshur County, Texas, are involved. A producing oil well was drilled on the tract in 1934. This suit was instituted in 1938.

Plaintiff's alleged cause of action was contested upon a plea in abatement, general denials, not guilty and special pleas of res adjudicata and the statutes of ten, and twenty-five years of limitations.

The stipulated and uncontroverted facts reveal that W. H. Poland was the common source of title. In 1879, Poland conveyed to W. H. Ramey 120 acres out of the King Survey. The field notes and plat before us show the shape of the tract was 950 varas long east and west on its north line, the same length on its west line, 475 varas on its south, thence north 475 varas, east the same distance and again north the same distance to the northeast corner. In the main the tract composed that part of a square, omitting its southeast quarter. Ramey's deed was promptly filed for record. Ramey, with his family, immediately moved onto the land and occupied it as a homestead until 1891, when he sold to Harris.

On August 30th, 1881, Ramey (not joined by his wife) conveyed to the deacons of Primitive Baptist Church at Fellowship two acres, described as being 140 yards east and west and 70 yards north and south, out of the most northern southeast corner of the above mentioned 120-acre tract. The deed to the church was promptly recorded. Shortly thereafter a house of worship was erected near the western end of the two acre tract and a community cemetery was established, fenced in a square, approximately 147 feet or 53 varas each way, taken out of the southeast corner of the two acres. The plaintiff continued to use the building for religious worship and permitted its use for public school purposes until in 1910, when it was torn down and moved to a point about a half mile away. At all times since its establishment, the cemetery has been used by the entire public as a place to bury their dead. The church lot, including the cemetery, was adjacent to a community road which ran approximately on the dividing line between the Jones and Rowan lands. At that time the Jones land was unfenced except for small parts of it which were in cultivation; these were fenced against stock running at large.

On October 21st, 1891, Ramey and wife executed a deed to Harris, by the description of which it purported to convey 120 acres, which included the two acres previously conveyed by Ramey to plaintiff. Harris' deed was recorded, but he never did move upon the land or otherwise occupy it. Immediately after the Rameys executed the deed to Harris, they moved from the premises and George Jones moved on. Thereafter, on February 18th, 1893, Harris executed a deed to Jones purporting to convey the whole 120 acres, including the church tract. Jones' deed was not recorded until in 1930, about 37 years later.

In February, 1903, Jones purchased from J. M. Farr a 50-acre tract situated south and east of the 120 acres which practically squared Jones' holdings. The purchase by Jones of the 50-acre tract would be unimportant in this controversy except for the manner and time his two tracts were enclosed by fences, and the continued use of the community road to the cemetery and the church lot. Jones' family moved onto the 50-acre tract shortly after purchasing

it, and continued to cultivate parts of that and the 120-acre tract, until Jones died in 1919, and thereafter his wife and children continued to use the two tracts until the wife died in 1925, since which time the premises have been occupied by some of the heirs for the use of all.

Defendant Fla-Tex Corporation holds an oil and gas lease from the Jones heirs covering about 47 acres, which includes the two-acre church and cemetery lot.

In 1903, when Jones purchased the additional 50 acres, one Rowan owned the lands lying east of the Jones 120 and 50 acre tracts and had enclosed his lands by setting fences entirely upon his own property adjoining the Jones land and the church lot. In 1911 the stock law became effective in Upshur County and Jones fenced his holdings by joining his north and south line fences to those of Rowan's, and aided Rowan in repairing the fences between the two tracts. Jones erected gates in his north and south line fences for entrance and use of the community road leading to the cemetery situated near the center of the dividing lines between Jones' and Rowan's lands. Thereafter Jones continued to use the church lot (not included in the cemetery fences) along with the remainder of his woodland for pasture purposes. His small fields of cultivating lands were enclosed with fences so that his stock could not get on to them from the woodland.

The testimony is conflicting as to just when Jones constructed another fence from a point south of the cemetery extending in a northerly direction, passing west of the west cemetery fence across the two-acre church lot and veering eastward and again north paralleling the Rowan fence to where he joined a cross fence of his own, thus enclosing a portion of the church lot by his own fences. The construction of this line of fence left a lane between the Jones and Rowan lands north of the cemetery to be entered through a gate maintained by Jones. One of the Jones heirs testified that this fence was constructed in either 1914 or 1915; among other heirs the date ranged from 1911 to 1918; other witnesses said they never noticed the fence until various dates between 1918 and 1932. The trial court made no finding of facts as to the date this particular fence was built, and to our minds this date, and the time when Jones began to assert adverse title, are controlling in determining the limitation period, as well also in determining what portion of the two-acre tract was thus fenced and taken possession of by Jones.

The trial court filed findings of facts and conclusions of law thereon. Paragraphs 1 to 7 of the fact findings include substantially the matters above detailed. In paragraph 8 the court found that Jones fenced his lands (and included the two-acre church lot) in 1911, and, "He (Jones) began then to claim for the first time that portion of the two acres, other than that on which the cemetery lay, and pastured his cattle on the same regularly each year. In 1928 some timber was sold off of the two acre tract, and in 1930 the same was put in cultivation, and a crop was made each year up until around the year 1936. The oil well in question was drilled on the western end of said two acre tract in 1934." After other findings not necessary to relate, again in paragraph 11 the court found: "I still think and so find that the Joneses used and enjoyed the remainder of said two acres, other than that which had been appropriated for graves, peaceably and adversely from 1911 up until the filing of this suit in 1938."

In paragraph one of the court's conclusions of law, it is said: "The defendants are entitled to recover the land in controversy under the ten and twenty-five year statutes of limitation; and the plaintiffs are not entitled to recover anything."

Upon the findings and conclusions, judgment was entered that plaintiff take nothing.

It is obvious that the trial court based his conclusions of law that plaintiff could not recover against defendants, upon the theory that the limitation period in favor of the Joneses began to run in 1911, when they connected their outside fences with that of Rowan and thus enclosed with their land the church lot in controversy. We think the court reached an erroneous conclusion as a basis for the judgment entered.

It will be observed from what has been said that plaintiff held the record title to the two acres under its duly registered deed in 1881. Under prevailing conditions, its title could only be taken away by virtue of limitations. Defendants could not avail themselves of a claim to all of the little tract on account of some possible use put by them to a portion of it, because their deed was not of record prior to 1930. Article 5510, R.C.S.; Doom v. Taylor, 35 Tex.Civ.App. 251, 79 S.W. 1086; Holland v. Nance, 102 Tex. 177, 114 S.W. 346; Mc-

Donald v. Stanfield, Tex.Civ.App., 197 S. W. 892, writ refused. Defendants' rights depended solely upon having had for at least ten years, "peaceable and adverse possession thereof, cultivating, using or enjoying the same". This means that the possession must be open, visible and unequivocal; that is, must be openly, visibly and unequivocally that of the claimants in this case, under the unrecorded deed. Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S. W. 174; Whitaker v. Felts, Tex.Com.App., 155 S.W.2d 604. We have found nothing in the court's fact findings, nor in the testimony, which indicates that the Joneses exercised any more adverse claims, use and possession to and of the two acres, after the fences were connected with those of Rowan in 1911, and up to 1926, than at any time previously. At no time was the church lot fenced off from the open wooded pasture of Jones when his stock ran at large, and after the fencing in 1911 they continued to range there, as they had done before the fences were built, until the grounds were put in cultivation in 1930. We have already seen that plaintiff was the real record owner of the two acres in controversy, and it is the settled rule that constructive possession remains with the true owner and cannot be taken away by a limitation claimant without an actual entry and an open, visible, adverse claim accompanied by the use and enjoyment thereof. Thomas v. Southwestern Settlement & Development Co., Tex.Civ.App., 131 S.W.2d 31, writ denied, judgment correct.

Whether or not the open, notorious and adverse claims of Jones to that part shown to have been cultivated in 1930, began to run from 1926, when he began to clear it of timber for cultivating purposes, was an undetermined point by the court.

■ After Jones connected his outside fences with those of Rowan his stock continued to graze on his own lands, yet had an opportunity to and perhaps did range on the church lot as they had long done before any fencing was done. The fact that Jones' cattle incidentally grazed on the church lot while running in his woodland pasture, absent some other open, visible use, appropriation and enjoyment thereof, would not support the claim of adverse possession, sufficient to start the running of the statutes of limitation. This principle is announced by the following cases: Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457, 110 S.W.2d 555;

West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328; and Allison v. Groppenbacher, Tex.Civ.App., 142 S.W.2d 528, writ refused.

■ The last cited authorities also discuss another point which we think important in arriving at whether or not Jones intended to claim adverse possession of the two-acre tract by the manner of perfecting his enclosure in 1911. At that time he joined his north line fence with that of his neighbor Rowan, all situated on the latter's land. He likewise joined his most southern fence line to Rowan's fence somewhere south of the land in controversy. In doing this, the two-acre tract was incidentally enclosed with about 150 acres of Jones' land. In this connection, we also think it is significant that Jones provided and maintained gates in his north and south lines to permit the continued use of the community road leading to the two-acre tract upon which the cemetery was located. For the reasons stated, we have concluded that the trial court erred in entering judgment against plaintiff, based upon a conclusion of law that limitation started to run in favor of defendants at the time of such fencing in 1911.

As above indicated, there is evidence of probative force to the effect that Jones erected another fence either in 1914 or 1915, on his own land, extending from a point on his 50-acre tract north, crossing the two-acre tract and connecting somewhere north of the two acres with another fence of his own enclosing a part of the two acres with another tract of his own. And that during the years 1926 to 1929, one of the Jones heirs, as a tenant for the estate, cleared the timber off of a small field of perhaps eight acres, which included that part of the two acres lying west of the fence, put it in cultivation, and raised a crop on it each year until and including 1936. This testimony came from interested witnesses and could not be deemed to establish it as an undisputed fact. The court made no findings or conclusions relating thereto, and the fact remains undetermined by the court as to whether or not the full term of ten years of open, exclusive and adverse possession by the Joneses, elapsed from that time until the institution of the suit in 1938.

■ It may be added that even if the court had found that the full period had elapsed necessary to ripen title in the Jones heirs since the happening of said

overt acts, still it necessarily follows that not all of the two-acre tract was thus appropriated. The record does not disclose the location of the fence that crossed the two-acre tract. We only know that the whole tract was 140 yards long east and west; that this fence was west of a lane lying between it and the cemetery west line and that the cemetery was 53 varas east and west, and that it lacked about 62 feet of extending to the north line of the two acres. As we view the record in no event should plaintiff have been denied a recovery of all of the tract lying east of the Jones fence; such recovery, of course, would have been subject to the public's rights in the part dedicated for cemetery purposes.

The judgment must be reversed for a determination by a jury or by the court trying the case in lieu of a jury, of the question of limitation based upon the time the Jones heirs properly and legally began to assert adverse claim to that part actually used, cultivated and enjoyed. And for the further determination of the portion so claimed, used and enjoyed. We see no theory presented by this record how the plaintiff, who was unquestionably the record owner, should be deprived by defendants of such portions of the little tract not acquired by defendants by limitation.

■ In view of another trial, it is pertinent here to state that the trial court properly overruled defendants' plea in abatement and their plea of res adjudicata. These contentions were based upon allegations of (1) that plaintiff was not a corporation capable of suing in a corporate name, and (2) that in 1931 plaintiff, alleging that it was a corporation, instituted a suit in the district court of Upshur County against Humble Oil & Refining Company, a corporation, under which Fla-Tex Corporation holds, and under a rule of court for costs declined to comply with the order, and the case was dismissed by the court for want of prosecution. This record does not indicate that plaintiff is prosecuting this suit in a corporate name, but that the suit filed in 1931 is shown to have been by a corporation. The pleas, on this ground, were properly overruled, (1) because the parties in this and the former suit were not the same. 26 Tex.Jur., pages 11, 12 and 13. (2) The dismissal of the former suit did not have the effect to adjudicate any of the differences between the parties. The rule is announced in

Stout v. Tall, 71 Tex. 438, 9 S.W. 329, and Gibbs v. Lester, Tex.Com.App., 41 S.W.2d 28, 80 A.L.R. 431, in effect that, while the filing of a suit interrupts the period of limitation, an abandonment of the suit will have the same effect as if the suit had never been instituted; that to be of any consequence, it must appear that the suit was prosecuted to a final judgment.

■ We find in the record a further contention by defendants that plaintiff could not claim title under its deed from Ramey because the land was a part of grantor's homestead and was not signed by the wife. The trial court properly refused to sustain this contention. The record is replete with testimony that immediately after the conveyance was made by Ramey in 1881, plaintiff went into possession of the two acres and constructed a building upon it and used it for many years. The facts clearly reveal that the Rameys abandoned as a homestead the part so conveyed to plaintiff, and the husband's deed of conveyance became effective from and after such abandonment. Weinert v. Cooper, Tex.Civ.App., 107 S.W.2d 593, writ dismissed.

■ We are not in accord as to the disposition that should be made of this appeal, as revealed by the accompanying dissent of Justice BROWN. This is an action in trespass to try title and defendants have defended, among other things, upon adequately pleaded statutes of limitations. The majority believe that because of the nature of the suit and the defenses presented both in the pleading and by competent testimony, a rather serious question is raised as to plaintiff's right to recover the whole tract sued for. But because no finding of fact or conclusion of law was made by the trial court upon what we believe to be the controlling point in the case, we think it falls within the provisions of Article 1856, R.C.S., wherein it is provided that in reversing a judgment the appellate court shall render such judgment as the trial court should have rendered, "except when it is necessary that some matter of fact be ascertained * * *." The majority hold that it was necessary for the trial court sitting as a jury to ascertain and find whether or not plaintiff lost its title by limitation to that portion of the tract cleared and cultivated by Jones, between 1926 and 1938, when the suit was filed. We base our conclusions upon the statute above cited and the rule announced

by the Supreme Court in J. E. Earnest & Co. v. Word, 152 S.W.2d 325. Courts of Civil Appeals "should never render judgment in a case where there is uncertainty as to the matter to be decreed". Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178, 180. The majority hold that the controlling limitation period was between the dates last above referred to, and the trial court cannot be deemed to have found that issue in favor of the judgment entered. The case was tried upon the erroneous theory that limitation ran in favor of defendants since 1911, and the real issue has not been determined. We should therefore remand rather than render. Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031. In a case of this character, when the testimony raises a matter material to the rights of either party, though inadequately pleaded, the appellate court will not render such a judgment as will deprive a party of that right, but will remand for an amended pleading. Federal Underwriters Exchange v. Dorman, Tex.Civ.App., 137 S.W.2d 100, writ dismissed, judgment correct.

For reasons shown, judgment of the trial court is reversed and the cause remanded for another trial, in accordance with the principles and for the purposes herein announced.

BROWN, Justice (dissenting).

Being unable to agree with the majority opinion, I respectfully dissent.

An examination of the record discloses that the defendants, assuming the role of plaintiffs seeking affirmative relief against the plaintiffs, have bottomed their defense and claim of ownership by adverse possession of the entire two acres sought to be recovered by the plaintiffs, in whom the record title is vested.

It is an undisputed fact that the defendants could not, under any state of facts adduced before the trial court, recover the entire two acres in controversy. The undisputed evidence discloses that no attempt to use a portion of such tract was ever contemplated or attempted by the defendants. The portion referred to is that part of the two acres used for burying the dead and dedicated to the public for such purpose by the natural and humane acts of the plaintiff, a religious organization and institution, and also, perhaps, some portion of the tract not yet appropriated by the laying away of the dead.

This being true, and the undisputed evidence establishing such fact, if the defendants could defeat the title of the plaintiff by invoking the statutes of limitation, it is undoubtedly true that the defendants had the burden of suing for and proving title to the fractional part that they claimed.

Conceding, for argument's sake, that suing for and claiming the whole of the two acres in controversy would entitle the defendants to recover any portion thereof that they actually reduced to possession for the required number of years, it was manifestly incumbent upon the defendants to establish, by competent evidence, the part so claimed by such description that "the court, the sheriff, or any proper authority could identify the land claimed adversely and locate it on the ground".

The quotation is taken from the opinion in Hudson et al. v. Norwood, Tex.Civ. App., 147 S.W.2d 826, 829, writ dismissed, correct judgment.

A number of authorities are cited in the opinion of Mr. Chief Justice Leslie. Many other authorities support the pronouncement.

When the testimony was all in, the trial court was without evidence on which to base a judgment for the fractional portion of the tract to which the defendants assert they undertook to make an adverse claim, and under some theory that is not made clear to the writer, rendered judgment that the plaintiffs recover no part of the tract. The judgment being in effect that the defendants recover the whole tract because they have established title by adverse possession.

Permit the writer to observe that it is difficult for him to believe that any normal human being ever had an intent in his heart to claim title adversely to property owned by any religious organization that worships the God upon Whom all natural persons lean for protection against the ills to which our flesh is heir, for comfort in times of suffering and sorrow and for hope of salvation for our souls. Such an attitude toward property owned by an organization composed of natural persons, who are feeling for God as they struggle through this vale of tears, is contrary to the impulses and desires of those who believe in Him and fear Him. And this is peculiarly true of the type of persons who say they make such claim here, people who live close to nature and close to God,

the evidence showing that some of the members of this Jones family are communicants in and of this church and religious body against which they now say they claim adversely.

The very acts of these defendants in providing gates and a lane and such means of entering upon and leaving the property in question, belie any intention to ever take, use, hold and claim the property adversely to those in whom the record title rests.

For the reasons given, the judgment of the trial court denying the plaintiffs recovery of the tract of land in controversy should be reversed and judgment be here rendered for the plaintiffs; and the cause remanded to the trial court for an adjudication of the equities between the parties.