### ROGERS v. COTTON.
#### No. 9569.

Court of Civil Appeals of Texas. Galveston. July 17, 1931.

Rehearing Denied Sept. 24, 1931.

W. R. Petty, of Palestine, for appellant.

D. A. Frank, of Dallas, for appellee.

PLEASANTS, C. J.

This is a suit by appellant to recover damages for personal injuries resulting from his being struck by a motor-driven bus owned by appellee and operated by an agent and employee of appellee on a public road in Anderson county.

The petition alleges that the bus, at the time it ran against and injured the plaintiff, was being negligently operated by the driver for appellee. The acts of negligence with which the driver is charged were his failure to reduce the speed of the bus to fifteen miles per hour when passing the truck of plaintiff which was parked on the side of the highway, driving the bus at an excessive and dangerous rate of speed, and failure to use proper care to prevent plaintiff's injury after he saw plaintiff crossing the highway in front of the bus.

The answer of the defendant contains a general demurrer, numerous special exceptions, and a general denial, and he specially pleaded various acts of negligence by plaintiff which it is averred directly contributed to his injury; and further specially pleaded that plaintiff's injury was "due directly and proximately to an unavoidable accident for which the defendant is in no way responsible."

The trial in the court below resulted in a verdict and judgment in favor of the defendant.

The evidence shows that plaintiff was struck and seriously injured by a motorbus while being driven by an employee of defendant on a public highway. Just prior to the accident the plaintiff had parked the truck in which he was traveling on the highway and gone to the ditch on the side of the highway to procure water for the radiator on his truck. The accident occurred about dark in the evening. The defendant's car was following a short distance behind another car. When the car which defendant's car was following reached plaintiff's parked truck, it had to turn to the left side of the highway to pass the truck, and defendant's car made the same turn when it reached the truck. The plaintiff, returning from the ditch to his truck, attempted to pass in between defendant's car and the car it was following and was struck and injured by the defendant's car.

The driver of defendant's car testified that there was a car forty or fifty feet ahead of him which had maintained that position for a mile or two before they reached the parked truck; that the two cars were running about the same speed and remained about the same distance apart for some time before reaching the truck; and that he could not see ahead of the car in front of him. When the other car pulled to the left, he knew there was something ahead and bore to the left in the wake of the other car. He then saw that there was a truck on the road without any lights. He further testified:

"I decreased my speed at the time I started to go around him. The first time I knew the man was in the road was after the other car had passed the truck. The man when I

saw him was over on the left hand side of the road. The first thing I saw of him was about that much of his leg, from there down, from the knees down. When I saw the man I slammed on my brakes, and done everything, pulled to the left far as I could without going off of the dump. His truck was parked right on the highway, like he was driving down the highway. I don't suppose the left side of the truck was over a foot from the middle of the road, from the center line going down through there. The four wheels of the truck were all over on the pavement. Yes, sir, I struck him. When I struck him, he just whirled and fell, hit him on his right hip, it whirled him, and I pulled in to the right hand side of the road and stopped. I judge I was going somewhere between 10 and 12 miles an hour at the time I struck him. I don't know hardly how close he was to my truck (bus) when I struck him. * * *

"There was nothing at all that I could have done to have prevented hitting him, unless I had run clear off that dump, because I used every precaution in the world I could use. Yes, sir, my brakes were in good condition, practically a new car. Yes, sir, the lights were in good condition. * * *

"Yes, sir, I say when I started to pass that truck I slowed down from 10 to 12 miles an hour. He was just a short ways ahead of me when I first saw him. No, he was not as much as 200 feet ahead of me when I first saw him. The lights don't shine over 40 or 50 feet ahead of me the way they test them. He was something like 30 feet ahead of me when I first saw him. No, sir, I was not running at about 12 miles an hour when I first saw him. I suppose I was running about 20 miles an hour when I first saw him. He was 30 feet from me. Well, I guess we both saw him about the same time. I had done applied my brakes, he said: 'There is a man in the road.' Just like that. Yes, sir, Mr. Brannen (a passenger in the bus) said: 'There is a man in the road.' I had my foot on the brake by the time he said that. No, sir, I couldn't stop in 30 feet, not coming down grade on pavement. No, sir, I wasn't going up grade. No, sir, it was not a little up grade, there where that car was parked, it was right square in the valley. It was going down the slope like that."

Mr. Brannen, who testified for plaintiff, placed plaintiff's distance from the bus at the time he was first seen by the witness and the driver at about 50 feet.

Mr. Elmer Brown, an automobile mechanic and who qualified as an expert in driving and stopping cars, testified: "You ought to stop a car going 15 miles per hour, with four wheel brakes, in reasonable or average condition, in 6 to 8 feet. If I was going at the rate of 35 miles per hour I could stop the car anywhere from 10 to 20 feet, depending on your brakes, the condition they were in. Yes, sir, of course when going 10 to 15 miles an hour if you put on the brakes it just squats down in the road. * * * Yes, sir, all cars are equipped with head lights. With a good light you ought to be able to see 200 or 300 feet in front of you, if you were keeping a lookout."

J. A. Bell, a witness for plaintiff, testified: "A man driving a car with four wheel brakes, in reasonable good condition, going at the rate of 15 miles per hour, would go something like 10 feet before he could stop, using all means at hand."

■ We agree with appellant that this evidence raises the issue of discovered peril, and the trial court erred in failing to submit that issue to the jury.

While discovered peril is very imperfectly pleaded by plaintiff as a ground of recovery, we are inclined to the opinion that the pleading is sufficient, as against a general demurrer; but whether sufficient or not, the general demurrer and all of the special exceptions to the petition were overruled by the court. In these circumstances it would be unfair to the litigant, when the evidence raises a material issue sought to be presented by his pleadings, to affirm a judgment against him on the ground that his pleadings were insufficient to present the issue.

■ We are unable to agree with appellee that the plaintiff's request for the submission of the issue of discovered peril was properly refused by the trial court because this requested issue was presented to the court on the same paper and jointly with other issues requested to be submitted. It seems to us that our courts have gone to the very limit of reason in enforcing the rule requiring special issues to be requested separately, by relieving the court of the duty of submitting a material requested issue raised by the pleadings and evidence, merely because that in the instrument containing the request for the submission of such issue other separate issues which should be refused are requested to be submitted, and we are unwilling to extend this technical holding to include the request made by plaintiff in this case for the submission of the special issue of discovered peril. This request, as shown in the record, is in this form:

"Comes now the plaintiff and requests the court to submit to the jury the following special issues and questions, to-wit:

"Special Issue No. 1. Did the defendant's driver of the car in question which struck, collided with and injured the plaintiff, if he was injured at the time in question, discover the dangerous position of the plaintiff, if he was in a dangerous position, and realize his peril and realize that he would not probably be able to extricate himself therefrom so that in the exercise of ordinary care by the use of all means at his command

consistent with the safety of the car and its passenger and himself he could have avoided the collision, and striking of the plaintiff, O. G. Rogers. Answer: ———.

"Special Issue No. 2. If you answer the preceding question No, then you need not answer this issue, but if you have answered this issue, but if you have answered the same yes, then did the driver of said car in question after he was apprised of the fact as shown by your affirmative answer yes to the preceding issue, if you do so find, exercise ordinary care to use all of the means at his command consistent with the safety of the car and its passenger and himself in order to avoid the injury. Answer: ———.

"Special Issue No. 3. If you have answered the preceding issue yes, you need not answer this issue, but if you answer the same No, then was such failure a proximate cause of the injury of the plaintiff. Answer: ———.

"Special Issue No. 4. Could the defendant's driver of the car in question by the use of ordinary care have discovered the plaintiff in the dangerous position, if he was in a dangerous position, in time, by the exercise of all of the means at hand, to have avoided striking, colliding with and injuring the plaintiff, if he was struck and injured. Answer: ———.

"Special Issue No. 5. If you have answered No, then you need not answer this issue, but if you have answered this issue yes, then answer, was the failure of said driver to exercise ordinary care negligence. Answer: ———.

"Special Issue No. 6. If you have answered the foregoing issue yes, then was such negligence a proximate cause of the plaintiff's injury? Answer: ———.

"Requests by Plaintiff:
"W. R. Petty, Attorney for Plaintiff.

"Presented to the court before the reading and presenting of the main charge to the jury by the court, and by the court refused, to which action of the court the plaintiff then and there excepted.
"Ben F. Dent, Judge Presiding."

The first, and the second and third, of these questions which are only submitted in event of an affirmative answer by the jury to the first, could have been properly submitted as requested. The fourth question does not correctly submit the issue of discovered peril, and therefore it, as well as the fifth and sixth questions, which were only to be answered if the fourth should be answered in the affirmative, were properly refused. The trial court could have no difficulty in determining which of these requested issues should have been submitted to the jury, and the plaintiff's right to have the material fact issues of his case passed upon by the jury should not be denied

him for so slight a reason as the inadvertence of his attorney in not presenting these two distinct and separate issues in separate instruments and upon separate pieces of paper.

The finding of the jury that plaintiff's injury was the result of an unavoidable accident does not destroy his right to complain of the failure of the court to submit the issue of discovered peril. If that issue had been properly submitted, the jury might not have found that the accident was unavoidable, and plaintiff was entitled to an affirmative submission of all of the issues relied upon for recovery which were raised by the pleadings and evidence. Montrief & Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276; City of Pampa v. Todd (Tex. Civ. App.) 11 S.W.(2d) 247.

These conclusions require a reversal of the judgment, and it is so ordered.

Reversed and remanded.