**BEWLEY MILLS et al. v. FIRST NAT. BANK IN DECATUR.**

No. 13587.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 24, 1937.

Rehearing Denied Nov. 12, 1937.

Grady Woodruff, of Decatur, and McGown & McGown, Geo. Q. McGown, Jr., John M. Scott, and B. E. Godfrey, all of Fort Worth, for appellant Bewley Mills.

John L. Poulter, of Fort Worth, for appellant W. H. Askey.

Walker, Smith & Shannon, of Fort Worth, and C. T. Gettys, of Decatur, for appellee Bank.

BROWN, Justice.

Appellee Bank brought this suit in the district court of Wise county, seeking judgment against appellants Askey and Bewley Mills because of certain promissory notes executed to appellee by Askey, secured by chattel mortgage liens given on Askey's 1931 and 1932 crops of wheat, which had been stored by Askey with Bewley Mills. Appellee sought judgment on its notes, together with foreclosure of its said liens against both appellants, and, in the alternative, alleged that appellant Bewley Mills had converted said wheat and prayed for judgment for the market value of the same as against Bewley Mills.

Appellant Bewley Mills answered, alleging that it had received from Askey certain wheat in the years 1929 and 1930, as well as the wheat mentioned in appellee's pleadings, raised in the years 1931 and 1932, and it claimed to have storage charges and handling charges for all of said four years, and alleged that all of the charges made by it were protected by a lien as against the wheat raised in the years 1931 and 1932, and that its lien was superior to the Bank's prior chattel mortgage lien. Said appellant also alleged that it had advanced to Askey the sum of $2,420 on his 1929 crop of wheat, which Askey had paid to appellee Bank, and asserted that this constituted a charge and was protected by a lien against the 1931 and 1932 crop of wheat and was superior to the bank's chattel mortgage lien. Said appellant also alleged that if its charges, claims, and liens were not superior to the Bank's chattel mortgage liens, nevertheless such Bank had permitted its lien to be subordinated to those of said appellant by knowing of the storage of the wheat and neglecting to object to the same, thereby consenting thereto, and that the Bank was guilty of laches in failing to sooner enforce its rights, after receiving benefits accruing to its security by virtue of the storage of the same with appellant Bewley Mills.

Said appellant also alleged that the Bank was joint owner of the wheat with Askey and also sole owner of the said wheat, and it sought to charge appellee Bank, as well as appellant Askey, with all of its charges and claims and asked for a marshaling of the assets and an application of all other securities held by the Bank to the payment of its indebtedness before resort to its security by reason of its chattel mortgages on the wheat, in the event its claims were held inferior to the Bank's.

Appellee Bank made appropriate reply to such pleadings.

Appellant Askey filed an answer and cross-action, in which he alleged that he had stored the wheat in question with appellant Bewley Mills over a period of several years, and that he had made a settlement with it in October, 1930, whereby he paid off the accrued storage charges and the $2,420 advanced by Bewley Mills to him, and he sought to recover from Bewley Mills the value of the 1931 and 1932 crops of wheat, alleging conversion of same by Bewley Mills.

In such answer and cross-action, Askey asserted that on December 3, 1921, he gave a deed of trust to said Bank on certain described business property located in the city of Decatur, and that at such time this property was his business homestead. That thereafter, in May, 1924, an agreement was entered into by him and said Bank, to the effect that the trustee named in such deed of trust should sell the property under and by virtue of the terms and conditions of the deed of trust, and that the Bank should bid such property in and hold the same in trust for Askey. He asserted that this was done and that his indebtedness to the Bank had been paid, and he prayed for recovery of title to and possession of said real estate, and for a removal of the cloud cast upon his title thereto, by reason of the deed of trust, which he alleged is void, and the said trustee's deed.

In answer to such pleadings, the Bank replied, in substance, that under its agreement with Askey he had the right to redeem such property by first paying off all his indebtedness then owing or thereafter incurred, all of which Askey had failed to do. The Bank further alleged that the sale to it by the trustee named in the deed of trust executed to it by Askey was made with Askey's authority and at his special instance; and further alleged that if the property so conveyed was not intended by Askey to be applied toward the satisfaction of his debts due the Bank, and if said Bank did not acquire the full title to such property by reason of the trustee's deed, then, in the alternative, the trustee's deed created a valid and subsisting lien on such property to secure the Bank for all of the debts due it by Askey.

The Bank further alleged that if Askey did not make the deed of trust to it in good faith and for the purposes disclosed by the instrument, then such deed of trust was executed by Askey for the purpose of placing the property conveyed in the deed of trust beyond the reach of one of Askey's named creditors, who had obtained a judgment against Askey.

The case was tried to a jury, and after all evidence was taken, the court submitted only three issues to the jury. In the first issue the court requested the jury to find whether or not in October, 1930, Askey and Bewley Mills made an agreement whereby said Mills accepted certain

wheat then in its possession, belonging to Askey, in full settlement of all amounts of money owing by Askey to said Mills, including the money advanced and all charges incurred in connection with the storage and handling of the wheat. The jury answered this question: "No."

In the second issue the jury was required to find whether on December 3, 1921, being the date when Askey executed to said Bank the deed of trust in question, the property described in the deed of trust was used and occupied by Askey as a place to exercise the calling and business of said Askey. The jury answered this issue: "Yes."

Issue No. 3 we quote: "From a preponderance of the evidence what amount of money, if any, do you find would reasonably compensate Bewley Mills for its charges for storing and handling the wheat in question?" The jury answered: "$1314.-85."

Neither Askey nor Bewley Mills made any objection to the charge of the court, but Bewley Mills made a motion for an instructed verdict, which was refused.

On receipt of said verdict, the court rendered judgment for appellee Bank against Askey in the sum of $21,770.89, with interest and costs, and decreeing a foreclosure of the bank's equitable lien on the property described in the deed of trust mentioned above, and rendered judgment for said bank against Bewley Mills in the sum of $2857.53, with interest, because of the conversion of the 1931 and 1932 crops of wheat by said Mills, on which said Bank had a prior lien, and decreeing that when such sum was collected from said Mills, same be applied as a credit on the judgment rendered in favor of the Bank against Askey. Judgment was rendered in favor of Bewley Mills against Askey, in the sum of $5,020.-15, with interest at 8 per cent. on $3,705.-30, and at the rate of 6 per cent. on $1,314.-85 until paid, together with a foreclosure of the Mills' lien on the 1929 and 1930 crops of wheat in its possession. The judgment disposes of all other issues and claims raised by all parties.

Bewley Mills and Askey have appealed.

■ Appellant Bewley Mills presents 33 assignments of error. The first 25 complain of the refusal of the trial court to give 47 specially requested issues presented to the trial court. We find two bills of exception in the transcript covering these proceedings. The first bill of exception complains of the refusal of the court to give said appellants' issues Nos. 1-a to 6-a, inclusive. The second bill of exception complains of the trial court's refusal to give appellants' issues Nos. 2 to 42, inclusive. Consideration of the assignments of error predicated upon the refusal of the court to give all of these special issues which were requested en masse is opposed by the appellee for obvious reasons. It is well settled in this state, and we shall not take time to cite authorities in support thereof, that requested issues must be submitted separately and the refusal thereof preserved by separate bills of exception, with the exception of certain issues that are wholly interdependent, and such instances are comparatively rare.

■ In the brief before us some of the assignments of error complain of the refusal to give several separate and distinct issues. Some of the issues requested are purely evidentiary; some have no support in the evidence. If one or more of the special issues requested en masse should not be given by the court, then it follows that the refusal of all does not constitute error. Furthermore, the burden of proof is not sought to be placed as to all of the 47 issues requested en masse. Under the decisions we are not authorized to consider the first 25 assignments of error, but an examination of them, in connection with the whole record, discloses that there is no merit in them.

We find then the last eight assignments of error before us.

■ The twenty-sixth assignment complains of the refusal of the trial court to give the Mills' requested instructed verdict, on the theory that under the Warehouseman's Act (Vernon's Ann.Civ.St. art. 5638 et seq.) the Mills' lien for its charges was superior to the lien held by the Bank. In the first place, we do not believe the contention is sound, even as against the 1931 and 1932 crops, which were the only crops in which the Bank was interested and on which it had prior chattel mortgage liens; and in the second place, we are certain that all of the claims and charges made by the Mills against Askey for dealings had with Askey in 1929 and 1930 could not constitute indebtedness on which the Mills had a lien against Askey's 1931 and 1932 crops of wheat, and under no circumstances could

these claims, debts, and liens be held prior to the Bank's liens on the 1931 and 1932 crops. Furthermore, the Mills sought to recover storage and handling charges against Askey for all the crops raised in the years 1929, 1930, 1931, and 1932, and to have these charges satisfied out of all such crops even as against the asserted rights of the Bank. No effort was made by the Mills to have the jury ascertain the value of such charges for the years 1929, 1930, 1931, and 1932 separately. The one issue was submitted which was evidently intended to cover the charges for all four years. The judgment of the court conclusively shows that such was the theory on which the cause was submitted.

We have said that the charges made for the storage and handling of the 1929 and 1930 crops could not be rightfully charged to the Bank, and the Mills having made no effort to have the jury separate these charges, covering the crops raised during the four years in question, there was not and could not be any basis on which the trial court could have rendered judgment against the Bank for the charges covering the years 1931 and 1932, even if it could be successfully contended that the Mills' lien is superior to the Bank's; and this we expressly decline to hold.

If there be anything in the contention made by the Mills, to the effect that its charges are superior to the Bank's, it has waived the right to recover because it sought no finding by the jury on which to lay its claim. We find no merit in this assignment of error.

The twenty-seventh assignment complains of a certain argument made by counsel for the Bank. When we turn to the bills of exception, we find that counsel for the Mills, when the argument was made, stated the following:

"Mr. Godfrey: We don't understand counsel's argument for if he tells the jury they must use their judgment, then, it is against the instruction of the Court. It must be decided on the evidence under the Court's instructions, on the evidence from the witness stand and on that alone."

After these observations were made by said counsel, the counsel who made the argument replied:

"Mr. Gettys: It wasn't my thought the jury would not be bound by the charge of the Court, and decide on some consideration aside from that."

The theory of appellant is that the trial court erred in not instructing the jury not to consider this argument, but no such objection was made as is disclosed by the bill of exception. Furthermore, we find no error in the argument.

The twenty-eighth assignment complains of the trial court's granting the Bank permission to file a trial amendment after the cause had been submitted to the jury. This trial amendment simply alleged that the chattel mortgages held by the Bank on Askey's wheat were forthwith filed and registered in the office of the county clerk of Wise county, and that Bewley Mills had notice of the same. The bill of exceptions presenting this question was qualified by the trial judge by the statement that sometime during the trial the attorney for the Bank spoke to the court about filing this trial amendment and that the court indicated to counsel that it was agreeable for same to be filed, and that the court does not know just when it was actually filed, but that same was filed sometime during the trial. The appeal bonds filed by Bewley Mills and Askey described the judgment as being dated August 22, 1936, long after the date the trial amendment appears to have been filed, while the judgment bears only one date, to wit, July 27, 1936, and the verdict appears to have been filed July 30, 1936. There is quite a bit of confusion disclosed by the record, but even if the permission to file the trial amendment were error, all of which we do not hold, in the light of the record as we find it, nevertheless we believe that such error is harmless and that it was not necessary for the Bank to allege that its chattel mortgages were filed forthwith, but that under the broad allegations made by the Bank, which plainly showed that its mortgages were prior to any liens claimed by the Mills, the issue of whether or not the Bank's chattel mortgage liens had not been forthwith filed, appears to us to be a matter of defense. The evidence shows that the mortgages were filed forthwith. We do not believe that it was incumbent upon the bank to allege these facts. We find no merit in this assignment of error.

The twenty-ninth assignment complains of the trial court's rendering judgment without requiring the Bank to look to all other collateral security held by it before resorting to the grain, on which the Mills and the Bank both had security. We do not believe that the pleadings of the appellant Mills, under the facts disclosed in

206

this case, properly called for a marshaling of the assets, and we overrule the assignment of error.

■ The thirtieth assignment complains of the trial court rendering judgment for the Bank against the Mills in the sum of $2,857.53, asserting that there was no legal and sufficient evidence that the market value of the grain on the date of the alleged conversion was the same for which judgment was given. We gather from the record that the evidence was undisputed on this issue. The classification made by the Mills of the wheat on which the Bank asserts its liens was accepted by the trial court as correct, and the Mills thereby received the benefit of its expert judgment as to the proper classification of the wheat, all of which it did not seek to repudiate or deny. It could not have been injured by the finding of the trial court that its evidence was conclusive on such issue. The market value of such grades of wheat was likewise undisputed. We find no merit in this assignment of error.

The thirty-first assignment asserts that the trial court erred, in view of the jury's answer to issue No. 1, in not rendering judgment in favor of the Mills against both Askey and the Bank for the amount of the advancement of $2,420 made by the Mills to Askey long before the 1931 and 1932 crops of wheat were planted and harvested, the Mills asserting that its lien for such advancement was prior and superior to that of the Bank on all of the wheat stored with the Mills. To this contention we cannot agree, for reasons heretofore stated. The assignment is not well taken.

■ The thirty-second assignment asserts that the trial court erred in not rendering judgment in favor of the Mills and against the Bank and Askey, jointly and severally, for the amount of the advancement mentioned above, on the theory that the evidence conclusively showed that the advancement was made under the authority of the Bank and at its request, and that it received the advancement and benefits thereof. We do not find where this assignment of error has been briefed, and of the thirteen propositions advanced in appellant's brief, none are asserted to be germane to the assignment of error, and we take it that it has been abandoned. But should we consider it, we find that it has no support in the record.

The thirty-third assignment complains of the admission in evidence of a letter written by one of the Mills' agents. We find no error in the admission of this letter in evidence and the assignment of error is overruled.

This brings us to the contentions made by the appellant Askey. His first assignment of error complains that the trial court erred in disregarding the verdict of the jury and in rendering judgment foreclosing the equitable lien on Askey's real estate because same was Askey's business homestead. The assignment of error is supported by three propositions. The first asserts that the issue submitted to the jury was a material one, that the jury made a finding thereon, and the judgment of the court should have conformed thereto. The second proposition asserts that in the absence of a written motion for a judgment, notwithstanding the verdict, the trial court was without lawful authority to disregard the verdict of the jury and render a judgment inconsistent with and contrary to the verdict of the jury. The third proposition asserts that the deed of trust executed by Askey to the Bank on Askey's business homestead was absolutely void at the time it was given and was incapable of validation by any verbal agreement for the property to be sold by the trustee to the Bank, even after Askey discontinued using the property as a business homestead; that the bank acquired no valid title to such property.

■ Any finding made by a jury on an issue which is not controlling may be disregarded by the trial court and furnishes no basis for the contention that a motion should be made for judgment notwithstanding the verdict. Such a situation is here presented to us. See McGee v. Cage (Tex. Civ.App.) 283 S.W. 283; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731.

■ Let us admit for argument's sake that the deed of trust lien was executed by Askey to the Bank on this business homestead without the joinder and consent of Askey's wife. Nevertheless the undisputed testimony shows that Askey abandoned the property in question as to all homestead uses long prior to the year 1924, and that in the year 1924 Askey requested the trustee, designated by him in such deed of trust, to sell the property under the authority vested in the trustee in such instrument

and requested the mortgagee bank to purchase the same at the trustee's sale. That Askey had the authority to request such trustee to do that which was done at the time and under the circumstances shown in this record, we have no semblance of a doubt. · The principles set forth in the opinion by Mr. Chief Justice Johnson in the case of Weinert et al. v. Cooper et al. (Tex.Civ.App.) 107 S.W.2d 593, and the cases cited in review, support our contention that Askey, having given the deed of trust lien on the premises in question, and having abandoned the same for all homestead purposes, and long after such abandonment having authorized and directed the trustee named in the deed of trust to sell the same under the authority vested in him to the bank, and having directed the bank to purchase the same at such sale, the equitable lien asserted by the bank in such property is by us held to be valid and binding. Here the bank has not contended for the absolute title to the property by virtue of the sale under the trustee's deed, but only contends for its asserted equitable lien.

The assignment of error is overruled and the judgment of the trial court is affirmed.

On Motion for Rehearing.

Appellant, Bewley Mills, has misunderstood the language used by us when we said: "The first bill of exceptions complains of the refusal of the court to give said appellant's issues Nos. 1-a to 6-a, inclusive. The second bill of exceptions complains of the trial court's refusal to give appellant's issues Nos. 2 to 42, inclusive."

We had no intention to qualify or define the manner in which the bills of exception were taken, by such language, nor do we believe that the language is susceptible of such construction. What we were saying was that the bill of exceptions was addressed to the refusal to give certain six special issues, in one instance, and the other bill was addressed to the refusal to give certain forty-one special issues, without naming and numerating each issue. It is readily seen that the word "inclusive" was so used in each sentence to which appellant takes exception.

We have no disposition to appear captious. We are endeavoring to follow the precedents set for us.

Assuredly it cannot be said that special issues 1-a, 2-a, 3-a, 4-a, 5-a, and 6-a were not requested en masse and on one sheet of paper.

If the notations shown on the bill of exceptions to the refusal of the other forty-one special issues are sufficient to take the presentation out of the general rule, and shows that we must consider the issues as separately presented to the trial court; or if the rule, laid down in Rogers v. Cotton (Tex.Civ.App.) 42 S.W.2d 173 (writ dismissed), which is a complete departure from the rule established theretofore, should be followed—then the record as presented to us discloses: That special issues 1-a and 2-a, which make inquiry of the Bank's acquiescing in Askey's storing the wheat and ratifying Askey's act in so doing, are wholly immaterial to any issue raised by the evidence. Special issue 4-a asks the jury to find whether the Bank and Askey were joint owners of the wheat, and 5-a inquires as to the Bank's sole ownership. The evidence does not raise either issue.

Issue 6-a asks the jury to find whether or not the Mills continued to store the wheat while relying on the act of the Bank in not objecting to such storage. This issue · is immaterial to any issue raised by the evidence.

The sixth assignment of error complains of the refusal to give special issues Nos. 2, 3, 5-a, 6, 7, 9, 27, and 28.

These issues present matters not so related that they may be presented in one assignment of error.

For instance, issue 2 requests the jury to find whether or not Askey gave the Bank the storage receipts; 3 inquires, did the Bank accept the receipts; 5-a inquires did the Bank own the wheat; 6 inquires whether or not the Bank, after receiving the wagon receipts, delivered them to one Walker and request the Mills to issue to the Bank negotiable warehouse receipts in lieu of the wagon receipts; 7 inquires, did the Mills make and deliver the warehouse receipts at the Bank's request; 9 asks, did Askey by delivering the grain to the mills, at Decatur, deliver same to the Bank; 27 asks, did the Bank by accepting and retaining the warehouse receipts hold itself out as owner of the grain; and 28 asks, did the Bank exercise full and complete ownership over the warehouse receipts?

We cannot consider an assignment of error that is so multifarious.

The seventh assignment complains of the refusal of special issues Nos. 4, 5, and 8.

Issue 4 asks the jury to find whether or not the Bank, at the time it accepted the wagon receipts, knew that the Mills were claiming storage charges on the grain and a lien to secure payment of same; No. 5 asks the jury to find whether or not the Bank ever objected to the grain being stored with the Mills; and No. 8 asks the jury to find whether or not the bank accepted the warehouse receipts and retained same without objecting to the charges recited in the face of same.

If we are warranted in holding that these special issues are so closely related that we should consider an assignment of error complaining of the refusal of the three, we find no error because the three issues are immaterial to any issue presented in the case.

The eighth assignment of error complains of the refusal of the trial court to give special issue No. 10, which asks the jury to find whether or not the Bank owned the receipts from the time Askey gave them to the Bank down to the time of the trial.

The evidence raises no such issue.

The ninth assignment of error complains of the refusal to give special issues Nos. 11 and 12, which ask the jury to find whether or not the Bank knew that Askey was storing the grain with the Mills, and whether or not the Bank agreed to such storage.

These issues are immaterial, even if raised by the evidence.

The tenth assignment of error complains of the refusal to give special issue No. 13, which asks the jury to find whether or not the Bank authorized Askey to either sell the wheat or to procure an advancement of money on same.

Even if the evidence were sufficient to raise the issue, it is immaterial.

The eleventh assignment of error complains of the refusal to give special issue No. 14, which is: "If you have answered special issue No. 13 no, you need not answer, but if yes then answer: Do you find that in obedience to such request Askey did obtain advance of money from Bewley Mills?"

There is a wide gap between the act of *authorizing* Askey to either sell his wheat, on which he had given the Bank an express lien, or to borrow money from the Mills on such wheat, and that of *requesting* Askey to borrow money from the Mills on the wheat.

Even if the trial court had been duty bound to give special issue No. 13, the refusal of special issue No. 14 was proper because no predicate had been laid for giving issue No. 14, and no *request* was sought to be established in any prior issue.

The evidence does not raise the issue before us.

The twelfth assignment of error complains of the refusal to give special issue No. 15, which asks the jury to find the amount of money advanced by the Mills to Askey.

The fact was undisputed and accounted for in the judgment.

The thirteenth assignment of error complains of the refusal to give special issue No. 16, which asks the jury to find whether or not the Bank received all of the money advanced to Askey by the Mills.

We do not believe there is evidence to support such issue, but, at that, it is wholly immaterial in the light of the record.

The fourteenth assignment of error complains of the refusal to give special issue No. 17, which asks the jury to find whether or not the Bank applied the money inquired about on the indebtedness Askey owed the Bank.

Even if the evidence were sufficient to raise the issue, it is immaterial here.

The fifteenth assignment of error complains of the refusal to give special issue No. 18, which asks the jury to find whether the advancement to Askey was to bear 8% interest, or not.

The issue is not material to any issue between the Bank and the Mills.

The sixteenth assignment of error complains of the refusal to give special issue No. 19, which asks the jury to find whether or not the Bank knew that Askey had no place of his own in which to store and safely keep the grain in question.

Such issue is immaterial here.

The seventeenth assignment of error complains of the refusal to give special issues Nos. 20, 21, and 22.

No. 20 asks the jury to find whether or not it was Askey's custom to deliver his wheat to some elevator after each harvesting; and No. 21, whether or not the Bank knew of such custom; and No. 22, whether or not the Bank made any objec-

tion to Askey's handling the grain in accordance with such custom.

These issues are not material here.

The eighteenth assignment of error complains of the refusal to give special issue No. 23, which asks the jury to find whether, or not, the Bank made no objection, to anyone connected with the Mills, to the grain being stored with the Mills.

This issue is immaterial here.

The nineteenth assignment of error complains of the refusal to give special issue No. 24, which asks the jury to find whether, or not, the Bank by its conduct caused the Mills to believe that it would be fully protected in its storage charges and advancements.

The evidence does not raise such issue.

The twentieth assignment of error complains of the refusal to give special issues Nos. 25 and 26. No. 25 asks the jury to find whether, or not, "the Bank accepted the benefits of the result of Bewley Mills carefully preserving, keeping, conditioning and handling the grain in question"; and No. 26 asks the jury to find whether, or not, the Bank, at the time it accepted such benefits, knew that the Mills claimed storage and a lien on the grain to secure same.

These issues are immaterial here.

The twenty-first assignment of error complains of the refusal to give special issue No. 27, which asks the jury to find whether, or not, the Bank, by its acceptance and retention of the warehouse receipts, held itself out as the owner of the grain in question.

The evidence does not raise the issue.

The twenty-second assignment of error complains of the refusal of special issue No. 28, which asks the jury to find whether, or not, the Bank exercised full and complete ownership over the warehouse receipts.

The evidence does not raise the issue.

The twenty-third assignment of error complains of the refusal of special issue No. 29, which asks the jury to find whether, or not, any consideration passed to the Bank, "or detriment to defendant Askey," by reason of the execution of the chattel mortgages involved in the suit.

This issue was not raised by the evidence.

The twenty-fourth assignment of error complains of the refusal of special issue No. 30, which asks the jury to find whether, or not, the chattel mortgages given by Askey to the Bank were given at the request of Askey for the purpose of protecting Askey's crops against a judgment that had been obtained against Askey by one Hood.

Askey made no effort to avoid the chattel mortgages in question on the theory that they are without consideration. The validity of such mortgages stands unquestioned, and the evidence does not raise the issue tendered.

The twenty-fifth assignment of error complains of the refusal of special issues Nos. 41 and 42.

No. 41 advises the jury that if they have found in answer to issue No. 40 that the Bank held other security for its debts besides the grain in question, then to find what other properties, real or personal, the Bank held as security; and No. 42 inquired of the jury the reasonable value of the real estate, involved in this suit, at the time of its purported sale, on June 3, 1924.

These issues are immaterial here.

We assure the appellant, Bewley Mills, and its counsel, that we have no desire in any case to dispose of many assignments of error, or even one, "with a shrug of the shoulders" or "by a wave of the hand." This is a voluminous record. Appellant's brief contains 148 pages, 33 assignments of error, and 13 "propositions upon which this appeal is predicated."

The original opinion is lengthy, and we endeavored to discuss the assignments of error that we felt should be discussed. We did not believe that there was merit in any of the first twenty-five assignments, and we endeavored to dispose of them in as few words as possible, because of the record presented.

Here we have endeavored to show why we believe there is no merit in one and all of the first twenty-five assignments of error.

As to appellant Mills' right to a marshaling of the assets, and our statement in the original opinion that we do not believe the Mills' pleadings, under the facts disclosed, properly call for a marshaling of the assets, we call attention to the fact that the doctrine will not be invoked if it serves to "delay or inconvenience the paramount encumbrancer in the collection of the debt, or prejudice him in any manner." See 28 Texas Jur. p. 753, par. 3, and cases cited.

Likewise the doctrine will not be invoked if the properties are insufficient to satisfy

the paramount lien. 28 Texas Jur. p. 756, par. 6, note 5. The same Text at page 754, par. 3, declares that the doctrine "may be invoked only where the paramount creditor's right to resort to both funds is clear and not seriously disputed, and the remedies available for reaching the funds are reasonably prompt and efficient."

Every right contended for by the Bank was hotly contested by the Mills and by Askey; and it was not attempted to be shown that the properties on which the Bank claimed securities were reasonably worth more than the Bank's claims.

We adhere to our former holding. A case for the marshaling of assets has neither been pleaded nor proved. 28 Texas Jur. p. 761, par. 10.

The motion of appellant Bewley Mills is overruled.